John D. CONDON, A. H. Handley, Albert Bowers and W. A. Read, Plaintiffs,

v.

Coyn RICHARDSON and Thomas Faller, individually and as Officers and Directors of Regency Life Insurance Company, an Illinois Insurance Corporation, John A. Schwandner, as an Officer of Regency Life Insurance Company, Coyn Mateer, Walter W. Winter and Robert E. Sanders, as Directors of Regency Life Insurance Company, an Illinois Insurance Corporation, and Regency Life Insurance Company, an Illinois Insurance Corporation, Defendants.

No. 4105.

United States District Court
S. D. Illinois, S. D.
Nov. 22, 1967.

William M. Giffin, Thomas W. Gray, Springfield, Ill., for plaintiffs.

George B. Gillespie, Springfield, Ill., Mervin L. Beil, Charleston, Ill., for defendants.

## OPINION AND ORDER

ROBERT D. MORGAN, District Judge.

This cause is before the court upon the motions of the several defendants to dismiss the complaint. Because of evidence received on application for preliminary injunction and various affidavits which have been filed, these motions have been treated as for summary judgment under Rule 12(b) of the Federal Rules of Civil Procedure.

Plaintiffs are minority stockholders of the defendant, Regency Life Insurance Company, an Illinois Insurance Corporation. Coyn Richardson and Thomas Faller are sued individually and as officers and directors of Regency. Other individuals named as defendants in the suit are sued as directors of Regency.[1]

The original complaint contained three counts, jurisdictionally based upon Section 10(b) of the Securities Exchange Act of 1934, as amended, 15 U.S.C. 78j (b), and Rule 10(b)–5 promulgated by the Securities Exchange Commission thereunder. 17 C.F.R. § 240.10b–5. A fourth count alleges a breach by Richardson and Faller of fiduciary duties owed to the corporation under the provisions of the Illinois Business Corporation Act, I.R.S. 1965, c. 32, § 157.86, and the Illinois Insurance Code, I.R.S. 1965, c. 73, §§ 736.1, 736.2.

The complaint prays injunctive relief, damages and the nullification of certain transactions therein alleged.

On September 25, 1967, by an amendment to the complaint, a fifth count, jurisdictionally based upon Section 10 (b) of the federal act and Rule 10(b)–5, was added.

The defendants have moved to dismiss the complaint on the ground that it does not state a cause of action under Section 10(b) and Rule 10b–5. The court is now concerned only with that question, whether a cause of action cognizable by a federal court under the federal statute is stated in the complaint.[2]

This suit is brought as a class action on behalf of the plaintiffs and all other Regency shareholders who are similarly situated, and as a derivative suit on behalf of the corporate defendant. In support of the derivative suit thereof, the complaint alleges that the individual defendants, Richardson and Faller, who are directors and the chief executive officers of Regency, completely control and dominate a majority of the board of directors of Regency. Under those circumstances, it is alleged that a suit by Regency for the protection of its own interests is impossible.

Allegations of the complaint which are material to all counts are as follows:

Regency Life Insurance Company is organized under Illinois law as an insurance corporation. In and prior to April, 1965, Richardson and Faller were directors and executive officers of the corporation. In about April, 1965, Richardson and Faller proposed to the board of Regency that a rights offering be extended to Regency shareholders whereby such shareholders could buy additional Regency stock at a price of $5.00 per

1. Upon plaintiffs' motion, the cause was dismissed as to Herman G. Bodewes, named as a defendant in the latter group.

2. Count IV, based upon alleged violations of state law, is a pendant count, having no independent jurisdictional basis.

All parties to the suit are citizens of Illinois. If the court's jurisdiction is not invoked by the counts alleging a violation of federal law, there is no jurisdictional basis to sustain Count IV of this complaint. 28 U.S.C. § 1332.

share. That offer led to the subscription of about 50% of the offered shares within the time limited for such subscriptions. Shortly before the time expired, Richardson and Faller bought the approximately 45,000 unsubscribed shares included in the offer. It is alleged that the market value of Regency shares at that time was about $10.00 per share.

In August, 1965, a resolution was adopted by a majority of the Regency board of directors removing Richardson and Faller as officers of the corporation. They remained removed until December, 1965, at which time, at the annual meeting of Regency shareholders, they succeeded in electing their own slate of directors. They then resumed their positions as executive officers of Regency.

Shortly thereafter, Richardson and Faller purchased the some 32,000 shares of Regency held by six directors of the corporation at a price alleged to be less than the $5.00 price of original issue.

Richardson and Faller have maintained a dominant position in the control of the corporation since December, 1965.

Under date of August 8, 1967, the plaintiffs presented a written demand and request to the board of directors of Regency that the board take action to remove Richardson and Faller from their executive positions with the corporation. They also demanded that a special shareholders meeting be called to facilitate the action demanded of the board. Specific attention was directed to "matters involving this Company's relationship with Great Heritage Life Insurance Company, American Security Life Insurance Company and Investors Unlimited, which are the companies that "Richardson and Faller had been dealing with individually and against the best interest of Regency Life Insurance Company." The instrument further stated that failure of the board to take favorable action upon the demand within five days would be deemed a refusal by the board to comply with the demand.

On August 12, 1967, the demand was submitted to the regular meeting of the board by board chairman, Herman Dammerman. The board then took the following action, by majority vote: Removed Dammerman as chairman and elected defendant, Coyn Mateer, to replace him; rejected a motion by Dammerman to take immediate action upon plaintiffs' demands; and appointed a committee to investigate the charges contained in the demand and to report back to the board at its next "monthly" meeting.

Plaintiffs made no further effort to obtain action by the corporation, for the reason, as they allege, that Richardson and Faller completely control and dominate the board and "further demands and requests to the Board would be futile."

Finally, material to all counts except Count IV, the complaint alleges that Richardson and Faller employed deceptive and manipulative devices and practices, and used the instrumentalities of interstate transportation and communication in connection with the several transactions of which complaint is made in violation of Section 10(b) of the federal act and Rule 10b–5 of the Commission.

Each of Counts I through III is based upon a separate transaction which is alleged to constitute a violation of the federal act. The gravamen of these several counts is summarized as follows:

Count I alleges Richardson and Faller at all pertinent times owned the controlling interest in a corporation known as Investors Unlimited, Inc., which, in turn, owned about 70% of the shares of American Security Life Insurance Company; that on January 26, 1967, Richardson and Faller entered into an agreement with American Security to sell to the latter corporation 67,500 shares of Regency stock owned by them for $7.75 per share, and granted to American Security an option to purchase an additional 32,500 shares; that, at the time of that sale, there was a limited market for Regency shares and that the asking price of such stock ranged from $2.00 to $2.50 per share; that at a meeting

of the board of directors of Regency held on March 4, 1967, Richardson reported that he and Faller had transferred 67,500 of their shares of stock in Regency to American Security and had granted to American Security an option to purchase an additional 32,500 shares; that at the same meeting a resolution was adopted by the Board of Directors of Regency containing a statement of intent for the consolidation of Regency and American Security into a new company to be known as American Regency Life Insurance Company, and directing that a consolidation committee be appointed by the respective boards of Regency and American Security for the purpose of adopting and approving a plan for the consolidation of the two companies; and that, by the sale of the shares to American Security as alleged, the latter company suffered a substantial loss of reserves which would be carried forward to the adverse effect of Regency and its shareholders on any merger or consolidation of the two insurance companies.

Count II of the complaint alleges, in material part, that in January, 1967, Richardson and Faller planned with one Robert Anderson to obtain enough shares of Great Heritage Life Insurance Company to give them a majority interest in that company; that a tender offer was made by the individual defendants for Great Heritage shares, in which they offered to pay $2.60 per share for such stock if 150,000 shares were tendered and $3.15 per share for such stock if 205,000 shares thereof were tendered; that, on March 4, 1967, at a special meeting of the board of directors of Regency, Richardson and Faller advised the board that 51% of the shares of Great Heritage could be obtained, whereupon a motion by Faller was adopted to authorize Richardson to enter into a purchase agreement to buy majority interest in Great Heritage at a price not to exceed $3.20 per share; that on March 10, 1967, Richardson advised the executive committee of the board of Regency that 51% of the Great Heritage shares were not available; that on March 18, 1967, Richardson and Faller, at a special

meeting of the Regency board, sold and assigned to Regency all their interest as individuals in the tender offer which they had made for Great Heritage stock, pursuant to a resolution adopted by the board of directors to accept such sale and assignment and to assume all obligations incurred by the individual defendants under the tender offer; that Regency expended about $500,000 in the acquisition of shares tendered pursuant to the tender offer made by Richardson and Faller, for which Regency acquired approximately 46% of the outstanding Great Heritage stock, and that such 46% of Great Heritage stock "represents a very unliquid asset to" Regency; and that Regency became involved in a number of lawsuits to which Richardson and Faller had been parties and which grew out of the Great Heritage tender offer.

Count III of the complaint alleges in material part that, in January of 1967, Richardson and Faller arranged with Roger P. Elkins, president and a director of American Security Life Insurance Company, for the purchase by American Security and Regency of two-thirds of the outstanding capital stock of Great Equity Life Insurance Company from Great States Life Insurance Company; that on March 18, 1967, at a special meeting of the Regency board, Richardson and Faller obtained authority to purchase one-third of the shares of Great Equity, with American Security to obtain the additional one-third of such shares which were available; that as a result of that transaction, Regency obtained only about 25% of the outstanding shares of Great Equity while American Security received and purchased approximately 37% of the stock of that company; that American Security is controlled by Richardson and Faller by reason of their control of Investors Unlimited; and that the shares of Great Equity so obtained by Regency constitute " a very unliquid asset" of the defendant corporation.

Count V, after re-alleging the American Security transaction as alleged in Count I, alleges that Richardson and

Faller had entered into an agreement with a corporation known as Life Security of Iowa, Inc., for the sale to Life Security of their remaining shares in Regency and their shares in Investors Unlimited; that they believe the terms of the contract of sale of the securities by Richardson and Faller to Life Security include an agreement to place principals of Life Security as officers and members of the board of directors of Regency, and that there be coordination by merger, or otherwise, between Regency and American Security in order that the control of Regency may be maintained by the ownership of Investors Unlimited of a majority of the shares of American Security and the ownership by the latter company of the substantial block of stock in Regency.

Documents of interest before the court are affidavits executed by the defendant, Richardson, and by Herman Dammerman, excerpts from minutes of meetings of the board of directors of Regency, attached to the complaint and to the motions to dismiss, and the transcript of evidence heard at a hearing upon plaintiffs' application for preliminary injunction, which was heretofore denied. These serve to amplify and elucidate the allegations of the complaint for the purposes of disposition of these motions. Also considered were the affidavit of D. Gilson Taft, filed as a counter-affidavit to defendants' motions to dismiss, and affidavit of W. Kenneth Irwin, attached to motion to strike counter-affidavit of plaintiff.

Two things seem abundantly clear from the pleadings in this cause. First, this file contains many indications that there may have been flagrant breaches of fiduciary duty by corporate officials in derogation of the interests of Regency, its shareholders and, possibly, its policyholders. Second, the real gravamen of the complaint is the invocation of the court's processes in aid of a contest between competing individuals for control of the company. We must, however, conclude that the complaint does not state a cause of action under Section 10(b) and Rule 10b–5, and that the complaint must be dismissed.

Section 10(b) provides in pertinent part:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, * * *—

"(a) * * *

"(b) To use or employ, in connection with the purchase or sale of any security * * * any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j (b).

Rule 10b–5 provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, * * *,

"(a) To employ any device, scheme, or artifice to defraud,

"(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made not misleading, or,

"(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

"in connection with the purchase or sale of any security." 17 C.F.R. § 240.10(b)–5.

■ To state a cause of action under the statute, as amplified by the rule, it is essential that a complaint allege some fraudulent or deceitful conduct in connection with a purchase or sale of securities. We think that the definition of "purchase or sale" is neither as restricted as defendants contend that it is nor as broad as the definition which plaintiffs apparently advance.

Birnbaum v. Newport Steel Corp., 2 Cir., 193 F.2d 461, which adopted a restrictive definition, has been partly overruled by implication through the decisions in A. T. Brod & Co. v. Perlow, 2 Cir., 375 F.2d 393, and Vine v. Beneficial Finance Co., 2 Cir., 374 F.2d 627. *Brod* and *Vine* do, as *Birnbaum* would not permit, look to the substance of the transaction, not wholly to its form, to determine whether a "purchase" or a "sale" is alleged in a particular set of circumstances. Those cases and Dasho v. Susquehanna Corp., 7 Cir., 380 F.2d 262, definitely broaden the reach of the Act in substantial fashion, but they do not open the floodgates to intrude the federal act into every instance alleged of breach of fiduciary duty or mismanagement of corporate affairs.

■ Any transaction which partakes of the character of a sale in its impact on the interests of a corporation and its shareholders must now be deemed to be within the proscription of the Act.

*Dasho,* decided June 26, 1967, by the Court of Appeals for this Circuit, was an appeal from an order of the District Court for the Northern District of Illinois, dismissing a derivative complaint. The complaint alleged a scheme by certain dominant shareholders of Susquehanna Corp. to defraud that corporation by the sale of shares which they owned to American Gypsum Company for some $1,740,000 more than the market value of such shares, and by a subsequent merger of Susquehanna and Gypsum. The court reversed the judgment, holding that the complaint did allege a purchase or sale of securities within the meaning of the Act. In that connection, the court reasoned that there is no inherent distinction under the Securities Exchange Act between a sale of securities for cash and the impact upon the shares of a corporation resulting from its merger with another corporation. Dasho v. Susquehanna Corp., 7 Cir., 380 F.2d 262, 266, 267.

The *Vine* case was a suit by a shareholder of Crown Finance Company against Beneficial Finance Company growing out of a New York short form merger of Crown into a wholly-owned subsidiary of Beneficial. The complaint alleged that Vine was the owner of class A shares of Crown; that Crown had two classes of shareholders, each having equal voting rights, except that the A shareholders had the right to designate one-third of its board of directors while the B shareholders had the right to designate two-thirds of the board of directors; that, in liquidation, a B share had a value of only one-tenth of that of an A share, and the A shares were entitled to 80% of any funds set aside for the payment of dividends on stock; that the officers and directors of Crown were its principal class B shareholders; and that such officers and directors, acting in concert with Beneficial, had defrauded Crown and its class A shareholders by appropriating for class B shareholders $900,000 that otherwise would have gone to class A shareholders, and by merging Crown into Beneficial for at least $800,000 less than the fair market value of Crown. The scheme involved the purchase by Beneficial of the class B stock from the directors of Crown, a public offer by Beneficial to the holders of the class A stock of Crown to acquire 95% of the total outstanding shares of Crown, and a short form merger of Crown into a wholly-owned subsidiary of Beneficial. The complaint further alleged that Beneficial entered into an agreement with the directors of Crown to purchase the class B shares at $15.00 per share and that it, at the same time, made a tender offer to purchase class A Crown shares. As a result of that offer, Beneficial was able to obtain 95% of the class A shares of Crown, a percentage of ownership which permitted it to effect the merger under state law without referring the matter to the shareholders of Crown.

The District Court dismissed the complaint, holding that Vine was not a seller within the meaning of the statute and he had no standing to sue. In fact, Vine had not sold his class A shares of Crown, but was in position where he

had the choice of either retaining shares in a non-existent corporation or selling the shares to Beneficial at a price of $3.29 cash per share.

The Court of Appeals reversed, holding that under the circumstances of the case Vine was a seller within the meaning of the Act. In that regard, the Court said:

> " * * * Since the complaint alleges that plaintiff, in effect, has been forced to divest himself of his stock and this is what defendants conspired to do, reliance by plaintiff on the claimed deception need not be shown. What must be shown is that there was deception which mislead class A stockholders and that this was in fact the cause of plaintiff's claim to injury. * * * " Vine v. Beneficial Finance Co., 2 Cir., 374 F.2d 627, 635.

In A. T. Brod Co. v. Perlow, 2 Cir., 375 F.2d 393, the court held that a stockbroker was a purchaser within the meaning of the Act and that he had a cause of action against individuals who had placed a stock purchase order with him for the purchase of securities listed on the New York Stock Exchange with the fraudulent intent of paying for the securities only if their market value increased by the date payment was due. The broker had purchased the securities pursuant to that order, but payment for the securities was refused by the party who placed the order because the price of the securities had declined prior to the date when payment was due. That case has little direct application here.

This court does not believe that the broadened conceptual principle of those cases provides aid for the instant complaint.

■ Counts II and III of the complaint allege, at most, corporate mismanagement of Regency in the purchase by it of securities. Though there seems to be no doubt that the transactions alleged were promoted and effected upon the strength of representations of Richardson and Faller to the board, the complaint and undisputed evidence before the court nevertheless shows that there was adequate disclosure of the material facts to the board.

In the Great Heritage transaction alleged in Count II, the fact was disclosed to the board that less than a majority of Great Heritage stock was available. In the face of that disclosure, the board, elected to accept the assignment of the interests of Richardson and Faller under the tender offer which they had made. It may be that the purchase was improvident and that it was made possible by the dominance of Richardson and Faller in the board room, but that fact doesn't provide a cause of action under federal law. It is clear, not only from the complaint but from the testimony of plaintiffs' witness, Dammerman, that the Regency board was advised in advance that majority ownership of Great Heritage was not available. There is no suggestion of material deception in this transaction.

As to Count III, there was likewise adequate disclosure of the facts surrounding the Great Equity transaction. Regency paid some $150,000, for which it received about 25% of the outstanding Great Equity shares. American Security paid about $225,000 for about 37% of the same shares. There is no allegation of fact to show why that disparity of ownership despite the resolution that each company would buy 50% of the available shares. There is, at best, a conclusory allegation that Richardson and Faller, through their control of Investors Unlimited and Regency, juggled the lion's share of the stock into the coffers of American Security. Just how this disparity is harmful to Regency or to any shareholder of Regency is not alleged. The contention seems to be that Regency would be better off if it had acquired no Great Equity stock. In this count, as in Count II, we find no allegation of material deception in the transaction cognizable under the federal act.

If a violation of law is disclosed by the allegations of either Count II or Count III, it was a violation of state law, not a violation of Section 10(b) of the Federal Securities Exchange Act.

A closer question exists with reference to the sufficiency of Count I to state a cause of action here in light of the decisions in the *Dasho* and *Vine* cases, but we think the picture here contains elements which distinguish it from that in *Dasho* and *Vine*.

■ Count I appears insufficient in at least one vital aspect. Though the complaint alleges that a merger between Regency and American Security is proposed, the minutes of a meeting of the board of directors of Regency, which were attached as an exhibit to the complaint, reveal that the resolution adopted by the board of Regency did nothing more than authorize the appointment of a joint committee, composed of certain directors of Regency and certain directors of American Security, to study the prospect of a consolidation, merger or cooperating arrangement between the two companies, and to report their findings and their suggested plans to achieve that result to a subsequent meeting of the board of directors. At this point, no positive action has been taken by the board of directors of Regency for a merger or consolidation of the two corporations. Therein lies the controlling distinction, in this court's view, between this case and both *Dasho* and *Vine*. At this stage there is nothing to enjoin and nothing to redress. If we assume that Richardson and Faller obtained an unreasonable profit through the sale of their shares to American Security, the damage in the present posture of this case is damage to American Security, not to Regency or its shareholders. There is no allegation that such price was not available to other Regency shareholders.

Under the present circumstances as shown by the allegations of the original complaint, the testimony of Dammerman, and the documents filed in support of and against the complaint, no cause of action under Section 10(b) and Rule 10b–5 is stated or appears to exist.

Count V of the complaint must also be dismissed. The difference between Count V and Count I is the addition in Count V of allegations relating to the sale by Richardson and Faller of certain other shares of stock of Regency and of their shares of stock in Investors Unlimited to Life Security of Iowa, Inc., and the allegation, upon information and belief, later supported by affidavit, that it is a part of the agreement between Richardson and Faller and officials of Life Security that certain officials of Life Security will assume from Richardson and Faller control of the board of Regency. To the extent that there are any allegations of wrongdoing affecting Regency, Count V merely realleges the allegations of Count I as to the American Security transaction. Count V can stand in no better stead that does Count I.

If plaintiffs and Regency have been damaged by the transactions of which complaint is made and by the acts of Richardson and Faller, the courts of Illinois are the proper forum for redress of such wrong.

In view of the opinions herein expressed, it appears unnecessary to pass formally upon a pending motion of some or all defendants to strike an affidavit of one D. Gilson Taft, filed on behalf of plaintiffs as a counter-affidavit against Defendants' Motion to Dismiss. Suffice it to say that, while there appears much acrimonious dispute over many possible questions of immaterial fact, this court finds no genuine issue as to any fact believed to be material to the decision here made.

For the reasons hereinabove stated, the complaint is dismissed and judgment is entered for defendants on their motions, plaintiffs to pay the costs of suit.