Wm. F. deHAAS, and Colorado International Corp., a Colorado corporation, Plaintiffs,

v.

EMPIRE PETROLEUM COMPANY, a Colorado corporation, Eugene M. Stone and American Industries, Inc., a Nevada corporation, Defendants.

Civ. A. No. 66–C–167.

United States District Court
D. Colorado.

June 26, 1969.

See also D.C., 286 F.Supp. 809.

James W. Heyer, Denver, Colo., for plaintiffs.

Holmes Baldridge and Arlen S. Ambrose, Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This is the final chapter in complex litigation which has concerned the validity of disputed mergers brought about by the defendants Stone and Empire Petroleum Company. There have been numerous hearings and a lengthy trial. The charges have revolved around the validity of these mergers under Rule 10b–5 of the Securities and Exchange Commission. The original and amended and supplemental complaints describe a series of transactions culminating in the merger of American Industries, Inc. and Inland Development Corporation which occurred in 1962, and allege that this was a fraudulent scheme to deceive and injure the shareholders of American. These issues were tried to a jury which returned the following verdicts:

(1) $10,000.00 on the first claim to compensate for losses suffered by American in the 1962 merger;

(2) $50,000.00 on the second claim to compensate for the interest paid on bogus debt obligations thrust on American in 1962;

(3) $5,000.00 exemplary damages against Stone on the second claim; and

(4) in favor of defendants on the third claim for recovery of salary.

The amended complaint contained a fifth and sixth claim, both of which sought equitable relief. These allege that the 1966 merger of American and Empire Crude Oil Company was also the result of a fraudulent scheme which is in violation of Rule 10b–5. 17 C.F.R. § 240.10b–5 (1968). We have held a hearing on the plaintiff's motion for the claimed relief. We have reviewed the briefs, the exhibits, have heard oral arguments and determined at the conclusion of this hearing that the plaintiff was not entitled to a rescission of this 1966 merger. Separate findings and conclusions cover this determination.

Plaintiff failed to prove that the information provided to the public shareholders of American regarding the 1966 merger plan was incomplete or fraudulently deceptive.[1] The public shareholders were given three lengthy letters discussing in depth the pros and cons of the proposed merger: (1) Stone's letter of August 3, 1966, which outlined the merger and its advantages from management's viewpoint;[2] (2) the letter of August 22, 1966, from the Stockholder's Committee, American Industries, Inc., which set forth the arguments against the merger and liquidation of American, many of which were presented at our recent hearing; and (3) Stone's letter of September 14, 1966, which explained the postponement of the vote of the merger and included a copy of the original complaint filed in this action.[3] Our examination of these letters convinces us that they adequately disclosed all the relevant and material facts to the public shareholders of American before the plan of reorganization was submitted for shareholder consideration. There is no other evidence of deception by the defendants with respect to this merger, and therefore, we must conclude that equitable relief is not justified under Rule 10b–5.

At the June 2nd hearing we reserved for later decision the question of whether including a fraudulent liability in the valuation of American used in the computation of the 1966 merger exchange ratio justified additional equitable relief. American incurred a $259,000.00 debt acquiring Mutual Supply Company from Empire Petroleum as part of the 1962 scheme which the jury found to be fraudulent. This debt was cancelled by court order during trial and the jury returned a verdict of $50,000.00

---

1. A claim for relief under Rule 10b–5 must prove some type of deception. Schoenbaum v. Firstbrook, 405 F.2d 200, 211 (2d Cir. 1968); Pappas v. Moss, 393 F.2d 865, 869 (3d Cir. 1968); Vine v. Beneficial Finance Co., 374 F.2d 627, 635 (2d Cir. 1967); O'Neill v. Maytag, 339 F.2d 764, 767 (2d Cir. 1964); Condon v. Richardson, 275 F.Supp. 943, 947 (S.D. Ill.1967); Globus, Inc. v. Jaroff, 266 F. Supp. 524, 529–531 (S.D.N.Y.1967); Simon v. New Haven Board & Carton Co., 250 F.Supp. 297, 299 (D.Conn.1966); Parker v. Baltimore Paint & Chemical Corp., 244 F.Supp. 267, 270 (D.Colo. 1965); Hoover v. Allen, 241 F.Supp. 213, 227 (S.D.N.Y.1965); Trussell v. United Underwriters, Ltd., 228 F.Supp. 757, 772 (D.Colo.1964). The deception may be either a misstatement of material fact or the omission to state a material fact. See, e. g., Stevens v. Vowell, 343 F.2d 374, 379 (10th Cir. 1965); Miller v. Steinbach, 268 F.Supp. 255, 279 (S.D.N.Y.1967); Barnett v. Anaconda Co., 238 F.Supp. 766, 775 (S.D.N.Y.1965).

2. Plaintiff bases most of his fraud allegations on this letter asserting that it "failed to reveal the nature of the pendency of this derivative action" and that it contained "material nondisclosures and misleading statements, and misrepresentations." Amended and supplemental complaint, p. 18, para. 38. However, Stone's subsequent letter sufficiently set the record straight, so to speak, and clarified any ambiguities present in the August 3, 1966 letter. Cf. General Time Corp. v. Talley Industries, Inc., 283 F.Supp. 832, 835 (S.D.N.Y.1968).

3. The sixth claim of the original complaint accurately predicted the 1966 merger and asked that "defendants Stone and Empire * * * be enjoined from merging, consolidating or attempting to merge or otherwise dispose of any assets of American;" Original complaint, p. 21.

to compensate American for the interest it paid on this liability.

There is no evidence in the record showing that either Stone or Empire Petroleum participated in this aspect of the valuation of American beyond their roles in the creation of the fraudulent liability in 1962. The exchange ratio used was based in part on an analysis prepared by Philip Arterburn & Company, Certified Public Accountants. The Arterburn report was submitted on September 30, 1965, and it gave American an asset value per share of $2.054 as compared to an asset value per share for Empire Petroleum of $0.9393. The market quotations for shares of Empire Petroleum and American were also considered in the final ratio of one and one-half shares of Empire Petroleum for each share of American.[4]

As indicated above, the remaining question is whether there was a constructive fraud under Rule 10b–5 based upon the merger exchange ratio being palpably unfair and unreasonable. Weisman v. M C A Inc., 45 F.R.D. 258, 264 (D.Del.1968); Knauff v. Utah Construction & Mining Co., 277 F.Supp. 564, 579 (D.Wyo.1967); Voege v. American Sumatra Tobacco Corp., 241 F. Supp. 369, 375–376 (D.Del.1965). We have concluded, of course, that the evidence fails to establish extrinsic fraud and have reserved the very narrow question whether the merger itself was so intrinsically unfair and unjust that it can give rise to a conclusion that it is intrinsically or constructively fraudulent. Knauff v. Utah Construction & Mining Co., 277 F.Supp. 564, 577 (D. Wyo.1967).[5]

This remaining issue is one of fact, and all of the surrounding circumstances are relevant in assessing the fairness of the merger terms. See, e.g., Hottenstein v. York Ice Machinery Corp., 136 F.2d 944, 953 (3d Cir. 1943); Clarke v. Gold Dust Corp., 106 F.2d 598, 603 (3d Cir. 1939); MacCrone v. American Capital Corp., 51 F.Supp. 462, 466 (D.Del.1943). Furthermore, all relevant value figures including book value, net asset value, going concern value and market value are pertinent to the issue of the fairness of a merger exchange ratio. See Sterling v. Mayflower Hotel Corp., 33 Del.Ch. 20, 89 A.2d 862, 863, 867, aff'd, 33 Del.Ch. 293, 93 A.2d 107, 38 A.L.R.2d 425 (1952); See generally 38 A.L.R.2d 442–454 (1954).

From an examination of the factual record with these general principles in mind, we must determine that the exchange ratio of one and one-half shares of Empire Petroleum for one share of

---

4. Stone's letter of August 3, 1966, gave this explanation of the procedures used in formulating the ratio:

[A]t no time during the last year has the market quotation on the shares of American Industries, Inc. exceeded $1.-00 per share. During that time, the market quotations on Empire Petroleum Company stock was varied from approximately 40 cents to $1.00 per share. On one basis, [the Arterburn report] the exchange ratio could be slightly more than two shares of Empire Petroleum for each share of American Industries, Inc. and on another basis, it could be on a ratio of one share for one share. Therefore, it was decided by Directors, with the assistance of legal counsel, that an intermediate ratio would be more likely to be correct and a ratio of one and one-half shares of Empire Petroleum Company for each share of American Industries, Inc. was approved by the Directors of Empire Crude Oil Company and American Industries, Inc. Letter of August 3, 1966, from Stone to the stockholders of American Industries, Inc., p. 3 (plaintiff's exhibit 54.)

5. The inquiry in common-law suits to enjoin a proposed merger is whether the terms of the merger are fair to all shareholders. See, e. g., Hottenstein v. York Ice Machinery Corp., 45 F.Supp. 436, 438 (D.Del.1942), aff'd, 136 F.2d 944, 953 (3d Cir. 1943); David J. Greene & Co. v. Dunhill International, Inc., 249 A. 2d 427, 432 (Ch.Ct.Del.1968); Rutman v. Kaminsky, 226 A.2d 122, 126 (S.Ct.Del. 1967). This test has apparently been adopted by courts reviewing exchange ratios incident to mergers under Rule 10b–5. Knauff v. Utah Construction & Mining Co., 277 F.Supp. 564, 579 (D.Wyo. 1967).

American was not so unfair and unreasonable so as to require avoidance. The Arterburn report in addition to overstating American's liabilities by $259,000.00 also innocently and substantially overvalued American's assets by a comparable sum. The uncontroverted testimony of Mr. Milton Levenfeld, tax counsel for Empire Petroleum, indicated that the Arterburn report overstated American's ownership in two oilfields by $375,000.-00. Apparently Arterburn credited American with full ownership of these fields valued at $750,000.00 whereas American and Empire each owned a half interest in them at the time the Arterburn report was prepared. Therefore, any undervaluation of American that resulted from the $259,000.00 error was amply offset by the $375,000.00 mistaken in American's favor.

Plaintiff argues that the only fair method of valuing American was an appraisal of American's assets "from the standpoint of their intrinsic value, not on the basis of cost less accumulated depreciation." Plaintiff's Brief in Support of Motion for Equitable Relief, p. 18. However, we are bound by the facts and are not justified in taking a special method of evaluation which might lead to a result desired by plaintiff. See David J. Greene & Co. v. Dunhill International, Inc., 249 A.2d 427, 433 (Ch.Ct. Del.1968). Our duty is rather to determine on the record before us whether the merger ratio used is fair under all the circumstances. It is our opinion that the 1966 merger ratio of one and one-half shares of Empire Petroleum for one share of American was fair, and hence, any residue of the 1962 fraud which may have been involved was legally immaterial.

■ We also determined at the June 2nd hearing that the damages awarded by the jury should be subject to an equitable lien running only to the public shareholders of American and excluding the interests of American owned by Stone and Empire Petroleum. It would serve no useful purpose to order a corporate recovery because the victimized corporation no longer exists. In addition, a traditional corporate recovery would enable the wrongdoers to profit from their wrongdoing. If defendants Stone and Empire Petroleum are allowed to share in the damages as shareholders of American, they would be in effect reducing the amount of damages assessed against them. Such a result is obviously undesirable and inconsistent with the purpose of Rule 10b–5. Vine v. Beneficial Finance Co., 374 F.2d 627, 637 (2d Cir. 1967); see Knauff v. Utah Construction & Mining Co., 277 F.Supp. 564, 577 (D.Wyo.1967); Liken v. Shaffer, 64 F.Supp. 432, 440–441 (N.D.Iowa 1946).

This equitable lien will be implemented in the following manner. The defendants will pay the amount of the judgment against them to the Clerk of this Court, and the Clerk will distribute the fund to the public shareholders of American in an appropriate proportion to their ownership interests.

Finally, we have sought to extend to the plaintiffs every possible opportunity to prove their allegations. No doubt they were disappointed in the verdicts of the jury. However, they had full opportunity to obtain compensation for the injustices which grew out of the Inland-American merger. Indeed we allowed plaintiffs to amend at the close of all the evidence so that there would be full opportunity to try the case on its merits. They have had a fair trial and the results are now in. All litigation matters must finally come to an end, and this one is no exception. Subject, therefore, to the entry of formal findings and conclusions with respect to the fourth and fifth claims, the matter is now terminated.