S. William GREEN, et al., Plaintiffs,

v.

SANTA FE INDUSTRIES, INC., et al., Defendants.

No. 74 Civ. 3915 CLB.

United States District Court, S. D. New York.

March 27, 1975.

Leventritt, Lewittes & Bender by Sidney Bender, New York City, for plaintiffs.

Rogers & Wells, New York City by William R. Glendon and Guy C. Quinlan, New York City, for defendants Santa Fe Industries, Inc., Santa Fe Natural Resources, Inc. and Kirby Lumber Corp.

Davis, Polk & Wardwell by S. Hazard Gillespie, James W. B. Benkard, and Charles R. Morgan, New York City, for defendant Morgan Stanley & Co.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Plaintiffs seek to maintain this purported class action on behalf of all of the former shareholders of Kirby Lum-

ber Corporation ("Kirby"), a Delaware corporation, who were offered or received cash for their shares when Kirby and Forest Products, Inc. ("FPI") were merged. Plaintiffs also sue derivatively to enforce the rights of Kirby as it existed prior to the merger (hereinafter "Old Kirby").

Jurisdiction is premised on § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa; this Court's jurisdiction depends, therefore, upon the existence of a cognizable claim under Rule 10b–5. Plaintiffs also assert that this Court has pendent jurisdiction over related claims of the defendants' breach of their fiduciary duties. The complaint asserts jurisdiction by reason of diversity of citizenship, but complete diversity does not exist, as is conceded in ¶ 1 of the first amended complaint.

Defendants moved for an order pursuant to Rules 12(b)(1), and (6), F.R. Civ.P., dismissing the amended complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Alternatively, defendants seek dismissal of the amended complaint for failure to satisfy Rule 9(b), F.R.Civ.P., because it does not state the circumstances constituting the claimed fraud with sufficient particularity.

The amended complaint shows that defendant Santa Fe Industries, Inc. owns all of the capital stock of Santa Fe Natural Resources, Inc., which, in turn, owned approximately 95% of the voting shares of Old Kirby. On July 11, 1974, Santa Fe Resources caused FPI to incorporate in Delaware. On July 29, 1974, FPI issued 1,000 shares [all] of its stock to Santa Fe Resources and received in return 474,675½ shares of Kirby which constituted approximately 95% of Kirby's shares, and all of those shares then owned by Santa Fe Resources. FPI also received $3,798,675.-00 in cash and assumed expenses arising as a result of the contemplated merger of FPI and Kirby to form New Kirby. On July 30, 1974, the board of directors of FPI, the same persons who comprised the board of directors of Santa Fe Resources, adopted a resolution, pursuant to § 253 of the Delaware Corporation Law, that state's short-form merger statute, providing that FPI be merged into Kirby with Kirby surviving the merger. Shareholders of Old Kirby, other than FPI, would become entitled to $150.00 in cash per Kirby share held, and would cease being shareholders of Kirby effective immediately. On the next day the customary Certificate of Ownership and Merger was filed with the Secretary of State of the State of Delaware, and the merger became effective, thereby extinguishing, or "freezing out" the minority shareholders of Kirby.

On August 1, 1974, New Kirby mailed to each former minority shareholder a notice of merger and an information statement consisting of 33 pages and supplementary exhibits. The information statement contained the terms of the plan of merger, a statement of Kirby's income, appraisals of the value of Kirby's stock and its assets, and a history of the prior dealings between Kirby and Santa Fe Industries and its affiliates. Exhibit C attached to the information statement is a copy of a letter from defendant Morgan, Stanley & Co. in which Morgan, Stanley, after consideration of Kirby's audited financial statements for the five years ending December 31, 1973, its unaudited financial statements for the four-month period ending April 30, 1974, its five-year forecast for 1974–78, and appraisals of Kirby's properties and mineral rights, placed a value on the minority shareholders' stock at $125.00 a share, adjusting for the assumption that Kirby's shares were broadly distributed and freely traded at prices within the range of prices typical of similar publicly held companies. The information statement also advised the minority shareholders that they could elect not to accept the terms of the offer, and instead seek a judicial appraisal in Delaware of the value of their shares. The information statement clearly described the time limitations within which

the dissenting shareholders were to note their objection, and the time within which the appraisal action was to be commenced; it also included the text of the Delaware appraisal statute, Del.Gen. Corp.Law, § 262.

In their complaint, plaintiffs allege that the merger, its statutory means of effectuation and the cash exchange offered, constituted a "device, scheme or artifice to defraud" in violation of Rule 10b–5. Plaintiffs contend that, with knowledge that the $150.00 a share offer understated the value of the physical assets of Kirby and therefore did not represent the true value of Kirby shares, Kirby and the Santa Fe affiliates obtained and submitted to the minority shareholders the $125.00 a share valuation from Morgan, Stanley "in order to lull the minority stockholders into erroneously believing (sic) that defendants were generous." (Complaint, ¶ 9). It is alleged further that Morgan, Stanley assisted knowingly and facilitated the fraud.

Plaintiffs' allegations have two distinct aspects. First, it is alleged that the means of effectuating this merger operated as a fraud on the minority shareholders in that the merger was consummated for the benefit of the majority shareholders, without any justifiable business purpose, except to freeze out the minority, and was effected without prior notice to the minority shareholders. Second, plaintiffs allege that the low valuation placed on their shares in the cash exchange offer segment of the merger transaction was in itself a fraud actionable under Rule 10b–5.

■ Plaintiffs' attack upon the Delaware short-form merger procedure based, as it is, upon Rule 10b–5 is without merit. The General Corporation Law of the State of Delaware permits a parent corporation to merge with another corporation, 90% of whose shares are owned by the parent, by executing and filing a certificate of ownership and merger together with a copy of the resolution of the board of directors of the par-

ent. Del.Gen.Corp.Law, § 253(a). *See generally*, N.Y.B.C.L., § 905 (McKinney's Consol.Laws, c. 4, Supp.1974); Stauffer v. Standard Brands Incorporated, 41 Del. Ch. 7, 187 A.2d 78 (Del.Sup.Ct.1962). The resolution of the board of directors may provide that minority shareholders are to receive cash in payment for their shares in the subsidiary although this has the effect of causing these shareholders to make a forced sale. See Vine v. Beneficial Finance Company, 374 F. 2d 627 (2d Cir. 1967). Plaintiffs did not have a vested right to remain shareholders of Kirby. Coyne v. Park & Tilford Distillers Corporation, 37 Del.Ch. 558, 146 A.2d 785 (Del.Ch.1958), aff'd, 38 Del.Ch. 514, 154 A.2d 893 (Del.Sup.Ct. 1959); Matter of Willcox v. Stern, 18 N. Y.2d 195, 273 N.Y.S.2d 38, 219 N.E.2d 401 (1966). The corporation law of a state may permit minority shareholders to be "frozen out" or to be "frozen in." Garzo v. Maid of the Mist Steamboat Co., 303 N.Y. 516, 104 N.E.2d 882 (1952). The Delaware corporation law does not require that the merger be effected for a business purpose. The statute reflects the public policy of Delaware with respect to rights of splinter interests in corporations. The Court does not view Rule 10b–5 as requiring a federal district court to analyze the motives of corporate directors, at least not in the absence of actual fraud and deceit. See Grimes v. Donaldson, Lufkin & Jenrette, Inc., Fed.Sec.L.Rep., ¶ 94,722 (N.D.Fla. 1974); *cf.* Bryan v. Brock & Blevins Co., Inc., 490 F.2d 563 (5th Cir. 1974). "[T]he very purpose of the [Delaware short-form merger] statute is to provide the parent corporation with a means of eliminating the minority shareholder's interest in the enterprise." Stauffer v. Standard Brands Incorporated, *supra*, 187 A.2d 80. See generally Borden, "Going Private—Old Tort, New Tort or No Tort?", 49 N.Y.U.L.Rev. 987 (1974).

■ When a merger is effected under this statute and all of the subsidiary's shares are not owned by the parent corporation, the merger statute requires that the surviving corporation

"*within 10 days after the effective date of the merger*, notify each shareholder . . . that the merger has become effective," Del.Gen.Corp.Law, § 253(d) (emphasis added); Carl Marks & Co. v. Universal City Studios, Inc., 233 A.2d 63 (Del.Sup.Ct.1967). It is not contended that Kirby failed to comply with this notice requirement, rather it is argued that the anti-fraud provisions of the 1934 Act require prior notice and disclosure to the minority shareholders. The primary objective of Rule 10b–5 is to impose a duty of disclosure upon a corporation and its controlling persons. Popkin v. Bishop, 464 F.2d 714 (2d Cir. 1972). That objective is to be achieved in conjunction with the state corporate law. This Court does not regard Rule 10b–5 as an omnibus federal corporation law having such broad reach as to modify the notice requirements of the Delaware merger statute, or prevent Delaware, in its legislative wisdom, from providing a means by which a majority can exclude a minority from the corporation's future affairs, so long as due process is satisfied, as it is here, by the appraisal procedures.

Plaintiffs contend further that the corporate defendants knowingly obtained an appraisal from defendant Morgan, Stanley which undervalued the worth of their Kirby stock so drastically as to be a fraud within the purview of Rule 10b–5. Plaintiffs value their shares at a minimum of $772.00 each, basing this figure on the *pro rata* value of Kirby's physical assets. For purposes of this motion the Court accepts plaintiffs' claimed valuation, although the propriety of using the liquidation value of Kirby's physical assets as the sole basis for determining the true worth of the shares owned by the minority shareholders is at least questionable. See In re Olivetti Underwood Corporation, 246 A.2d 800, 803 (Del.Ch. 1968); Application of Delaware Racing Association, 213 A.2d 203 (Del.Sup.Ct. 1965).

■ Accepting plaintiffs' valuation, the amended complaint, upon its face, fails to allege a course of fraudulent conduct.[1] In paragraph seven of their complaint, plaintiffs acknowledge that their valuation is based upon information provided by the corporate defendants in the merger information statement. The appraisal made by defendant Morgan, Stanley details the information upon *which it relied in computing the value* of the minority's shares in Kirby. Among the considerations relied upon by Morgan, Stanley were the values of Kirby's physical assets provided by Appraisal Associates and Riggs and Associates. The opinions of the latter two firms were appended to the merger information statement as Exhibits D and E, and the entire report of Appraisal Associates was available for inspection at the offices of Santa Fe Resources. The appraisal opinions, and detailed financial information, were provided *for the minority shareholders' use* in evaluating the merits of the cash exchange offer and in determining whether to seek their appraisal rights as dissenting shareholders.

Without passing upon the proper valuation of the Kirby shares, it is noteworthy that the information statement divulged the history of purchases of Kirby stock by the Santa Fe affiliates. Following the paradigm of "going private" transactions, an affiliate of Santa Fe made a tender offer for the shares of Kirby in 1967 and acquired 27,979½ shares at $65.00 per share. In the period from 1968 through 1973, Santa Fe affiliates purchased shares at prices ranging from $65.00 to $92.50 per share. None of the Santa Fe affiliates had acquired any Kirby stock since October 1973. The history of Santa Fe's affiliates' prior purchases provided plaintiffs with another basis of comparison for evaluating the merits of the exchange offer.

1. On oral argument, plaintiffs conceded that if the differential between price and true value was so slight that reasonable minds could differ, no action would lie under Rule 10b–5.

The complaint demonstrates merely that the parties to this action differ in their computation of the fair value of plaintiffs' shares. Whatever the information statement indicates about the fair value of plaintiffs' shares, the value of the physical assets "was discernible, as plaintiff[s] discerned it." Tanzer Economic Associates, Inc. v. Haynie, 388 F. Supp. 365, 369 (S.D.N.Y.1974). See also, Spiegler v. Wills, 60 F.R.D. 681 (S.D. N.Y.1973). The inadequacy of the offering price, standing alone, does not demonstrate bad faith or overreaching on the part of the controlling interests. See Muschel v. Western Union Corporation, 310 A.2d 904 (Del.Ch.1973).

In Dreier v. The Music Makers Group, Inc., (1973–74) CCH Fed.Sec.L.Rep. ¶ 94,406 (S.D.N.Y. February 20, 1974), a suit alleging a violation of Rule 10b–5 in connection with the merger of a publicly held corporation, The Music Makers Group, Inc., into a privately owned company, Leigh Group, Inc., effectuated by the voting power of Leigh Group, Inc., the majority shareholders of Music Makers Group, Inc., the Court dismissed the amended complaint holding that

> "non-disclosure remains an essential element in any section 10(b)–Rule 10b–5 action. Popkin v. Bishop, 464 F.2d 714 (2d Cir. 1972). The instant complaint does not allege any non-disclosure in connection with the merger; the treatment of the minority shareholders may well have been grossly unfair but it was completely open. Under these circumstances plaintiff's remedy is a state court action for appraisal pursuant to the Delaware Corporation Law." Id., at 95,410. Accord, Popkin v. Bishop, supra; Kaufmann v. Lawrence, 386 F.Supp. 12 (S. D.N.Y.1974)

If adequate disclosure is made, "[u]nderlying questions of the wisdom of [merger freeze-out] transactions or even their fairness become tangential at best to federal regulation." Popkin v. Bishop, supra, 464 F.2d 720. See also, Armour and Company v. General Host Corporation, 296 F.Supp. 470 (S.D.N.Y.1969).

It was for each shareholder to determine, on the basis of the information provided, whether the price offered was adequate or whether he should seek a judicial appraisal. The instant complaint fails to allege an omission, misstatement or fraudulent course of conduct that would have impeded a shareholder's judgment of the value of the offer. Cf. Levine v. Biddle Sawyer Corp., 383 F.Supp. 618 (S.D.N.Y.1974).

At least, if full and fair disclosure is made, transactions eliminating minority interests are beyond the purview of Rule 10b–5. Support for this proposition is found in the Securities and Exchange Commission's ("SEC") own estimate of the reach and the limitations of existing regulations in dealing with "going private" transactions. The interpretation propounded "by an agency charged with the administration of a statute, while not conclusive, is entitled to substantial weight." Zeller v. Bogue Electric Manufacturing Corporation, 476 F. 2d 795 (2d Cir.), cert. denied, 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973). The SEC has promulgated proposed rules which would subject such transactions to comprehensive regulation. See Proposed Rules 13e–3A and 13e–3B, 2 Fed. Sec.L.Rep. ¶¶ 23,704–05; Securities Act Release No. 5567 (1975), [Current] CCH Fed.Sec.L.Rep. ¶ 80,104. Notably, Proposed Rule 13e–3B(a) would make unlawful a shareholder freezeout transaction unless the transaction has "a valid business purpose" other than getting rid of a minority which might or does impede the will of the majority; and "the terms of [the] transaction, including any consideration to be paid to any security holder, are fair."

Another proposed SEC regulation would require, notwithstanding the provisions of a state's corporate law, that notice of the terms of any freeze-out transaction be sent to shareholders no later than 20 days prior to "authorization" of the transaction. Proposed Rule 13e–3A (c)(1). In addition to other disclosure requirements, both of the proposed rules would require that, for the consideration

paid to be deemed fair, it must exceed the value placed on the securities by "two qualified independent persons." Proposed Rule 13e–3A(c)(2).

Implicit in the Commission's expressed intent to enact these or similar rules is the conclusion, which this Court shares, that existing rules, including Rule 10b–5, do not reach the acts here complained of.

Assuming *arguendo* that the merger information statement did not constitute adequate disclosure, the amended complaint does not demonstrate a causal connection between the alleged deception and plaintiffs' damages. Plaintiffs did not tender their shares for cancellation and payment pursuant to this merger plan. On August 1, 1974, the information statement was mailed to the minority shareholders. On August 21, 1974, the plaintiffs made a demand for an appraisal of their shares pursuant to Delaware statute, but, by letter dated September 9, 1974, they purported to withdraw this demand. On September 10, 1974, plaintiffs commenced this action. From the outset, plaintiffs recognized the alleged deception and did not rely upon it.

■■■■ In a freeze-out merger, reliance need not be shown, Vine v. Beneficial Finance Company, *supra*, 374 F.2d 635; however, there must be some causal connection between the wrong done and the harm suffered. See Schlick v. Penn-Dixie Cement Corporation, 507 F.2d 374 (2d Cir. 1974); Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 495 F.2d 228 (2d Cir. 1974). In *Vine, supra*, although finding that no misrepresentation was made to the minority shareholders in a short-form merger, and that, therefore, there could be no reliance in the traditional sense, the Court found an actionable 10b–5 claim on the basis of misrepresentations made in the course of the parent company's acquisition of the shares needed to effect the short-form merger. See also, Voege v. American Sumatra Tobacco Corporation, 241 F.Supp. 369 (D.Del.1965). No allegation is made here that the Santa Fe affiliates acquired their dominant interest by means of a fraud. In sum, the instant complaint fails to satisfy even the relaxed standard of causation which must be shown to sustain an action as a "forced seller" under Rule 10b–5.

In finding that there is no causal connection, it may be added that the Court is not applying a standard of "but for" causation and does not view the Santa Fe affiliates as being immune from suit merely because the resulting merger could be effectuated without any action by the minority. See Swanson v. American Consumer Industries, Inc., 415 F.2d 1326 (7th Cir. 1969); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 385, n. 7, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *cf.* Kraficsin v. LaSalle Madison Hotel Co., (1972–73) CCH Fed.Sec.L.Rep. ¶ 93,586 (N.D.Ill.1972). Rather, the Court finds that these plaintiffs in their complaint fail to allege that they relied to their detriment on the alleged misrepresentation and were injured thereby.

■■■■ For the foregoing reasons, it appears that the amended complaint fails to state a claim under the federal securities laws. Since the complaint fails to state a federal claim, exercise of pendent jurisdiction to adjudicate common law claims of breach of fiduciary duty is inappropriate. Kavit v. A. L. Stamm & Co., 491 F.2d 1176 (2d Cir. 1974).

■■■■ Diversity jurisdiction will not lie in the absence of complete diversity of citizenship between all parties plaintiff and all parties defendant. Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435 (U.S.1806). The amended complaint states (¶ 1) that there is no diversity of citizenship between the plantiffs and defendant Morgan, Stanley.

■■■■ Plaintiffs lack standing to maintain this action derivatively in the right of Old Kirby. Under Delaware law, as a result of a merger, the derivative rights of the merged subsidiary pass to the surviving corporation. Bokat v. Getty Oil Co., 262 A.2d 246 (Del.Sup.Ct. 1970); Braasch v. Goldschmidt, 41 Del. Ch. 519, 199 A.2d 760 (Del.Ch.1964); Heit v. Tenneco, Inc., 319 F.Supp. 884

(D.Del.1970). See also, Voege v. Ackerman, 364 F.Supp. 72 (S.D.N.Y.1973). Assuming however, that the plaintiffs retain their rights as shareholders of Old Kirby after the merger, a derivative recovery would be an inappropriate remedy. If plaintiffs were to be successful on their derivative claims, the benefits would enure either to a corporation that is no longer functioning or to the entire class of Kirby shareholders, including the Santa Fe affiliates who are the purported malefactors. Vine v. Beneficial Finance Company, *supra*, 374 F.2d 637; de Haas v. Empire Petroleum Company, 300 F.Supp. 834 (D.Colo.1969). See also, Johnson v. American General Insurance Company, 296 F.Supp. 802 (D.D.C. 1969).

This complaint has been amended once. Plaintiffs on the oral argument of this motion show no facts or contentions which they could assert if given further leave to serve a second amended complaint. In the absence of any such showing, this motion is granted, and the amended complaint is dismissed.

So ordered.