TUVIA CONVALESCENT CENTER,
INC., d/b/a Hilldale Convalescent
Home, Plaintiff,

v.

NATIONAL UNION OF HOSPITAL AND
HEALTH CARE EMPLOYEES, A DIVI-
SION OF RWDSU, AFL–CIO; Trustees,
"1199" National Benefit Fund for Hospi-
tal and Health Care Employees; Trus-
tees, "1199" National Pension Fund for
Hospital and Health Care Employees,
Defendants.

No. 82 Civ. 5414(MP).

United States District Court,
S.D. New York.

Dec. 21, 1982.

Milman, Naness & Pollack by Sanford E. Pollack, Hewlett, N.Y., for plaintiff.

Sipser, Weinstock, Harper, Dorn & Leibowitz, by Jerome Tauber, New York City, for defendant Nat. Union.

Hendler & Murray, P.C., by Kenneth W. Malamy, Robert Post, New York City, for defendant Funds.

## MEMORANDUM

MILTON POLLACK, District Judge.

The defendants have moved to dismiss the amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure contending: (1) that complete diversity between the parties is lacking and that there is no jurisdiction under 28 U.S.C. § 1332; and (2) that the antitrust claims asserted in the Seventh and Eighth counts of the complaint are precluded by the labor exemption to the antitrust laws, contained in 15 U.S.C. § 17. Defendant National Union of Hospital and Health Care Employees, a Division of RWDSU, AFL–CIO (National Union) contends further that claims asserted against it under LMRA § 301, 29 U.S.C. § 185 are improperly raised since the National Union was not a party to the collective bargaining agreement. Defendant National Union states that if it were a party the claims in the first Six counts would be arbitrable and that in any event the claims are within the exclusive jurisdiction of the

National Labor Relations Board. Defendants Trustees "1199" National Benefit Fund for Hospital and Health Care Employees and Trustees "1199" National Pension Fund for Hospital and Health Care Employees (Funds) further contend that plaintiff has no standing to bring claims arising under E.R.I.S.A., 29 U.S.C. § 1132 and that the Ninth claim should therefore be dismissed.

For the reasons appearing hereafter, based on the memoranda from all the parties and a hearing before the Court, the claims against the National Union and the Funds are dismissed in all respects.

*I. The Underlying Dispute.*

The amended complaint asserts nine claims for relief. The first six claims seek compensatory and punitive damages from the defendant National Union for various labor practices, accusations of false imprisonment and withholding of information necessary for good faith bargaining. The Seventh and Eighth claims accuse the National Union and the Funds of engaging in restraint of trade, suppression of competition and causing an anti-competitive impact in violation of the antitrust laws. Finally, the Ninth claim charges the Funds with violating their fiduciary responsibilities under E.R.I.S.A.

The plaintiff, Tuvia Convalescent Center, Inc. (Tuvia), was a Connecticut corporation which did business under the name Hilldale Convalescent Home, until it terminated its operations, allegedly due to a strike by its employees. Defendant National Union is an unincorporated association and labor organization with its principal place of business in the Southern District of New York. The Funds are jointly trusteed labor management benefit funds within the meaning of 29 U.S.C. § 186(c)(5) and are employee benefit plans within the meaning of 29 U.S.C. §§ 1002 & 1132(d)(1).

The collective bargaining agreement between plaintiff and the New England Health Care Employees Union, District 1199, RWDSU, AFL–CIO (Local Union) was made on November 12, 1979 to expire on September 30, 1980. The Local Union is not named as a defendant in this action.

The National Union was not a signatory to the November 12, 1979 agreement.

On the expiry date of the first agreement, the plaintiff entered into an interim agreement with "(DISTRICT) 1199 N.E., NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, RWDSU, AFL–CIO ('Union')". The interim agreement was to have effect during the period of negotiations over a new contract after October 1, 1980. The sole substantive content of the interim agreement was to make provision for the continuation of employer contributions into the National Benefit Fund while negotiations continued. The interim agreement has no terms that limit the bargaining tactics of the parties.

Ultimately, negotiations failed and a strike ensued. Plaintiff complains that the strike was improper, that its bargaining agents were falsely imprisoned by union negotiators and that there were threats of violence. Plaintiff alleges that these activities caused its financial ruin and the eventual closing of the facility. Plaintiff also complains that the Funds failed to provide information that was needed in the bargaining process and that this failure was the result of a conspiracy between the Funds and the National Union.

*II. Preliminary Issues.*

Plaintiff conceded on oral argument that the absence of complete diversity precluded jurisdiction under 28 U.S.C. § 1332. Plaintiff is a resident and citizen of Connecticut and defendant National Union is an unincorporated labor association with Connecticut members. The Funds are managed by trustees, some of whom are citizens of Connecticut. Thus complete diversity is absent. *See Green v. Santa Fe Indus.*, 391 F.Supp. 849, 853 (S.D.N.Y.1975), *aff'd*, 533 F.2d 1283 (2d Cir.1976), *rev'd on other grounds*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).

In their memorandum in support of the motion to dismiss, Defendant National Union argues that the first six causes of action concerning breach of the collective bargaining agreement are arbitrable under the con-

tract and that they are not properly before the District Court. It was conceded upon oral argument that the absence of the Local Union from this suit eliminates the question of the exclusivity of the arbitration remedy from consideration.

■ The initial collective bargaining agreement between the plaintiff and the Local Union contained a broad based grievance and arbitration procedure that applies to a "dispute or complaint arising between the parties hereto under or out of this Agreement or the interpretation, application, performance, termination, or any alleged breach thereof". Were the Local Union a party it could demand arbitration, even though the contract terminated before the strike. *See Nolde Brothers, Inc., v. Local 358, Bakery & Confectionery Workers,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). *See also ITT World Communications, Inc. v. Communications Workers,* 422 F.2d 77 (2d Cir.1970). As the National Union concedes, since it is not a party to the agreement it cannot invoke the arbitration clause of the agreement.

*III. LMRA § 301—The First Six Claims.*

■ Plaintiff's claims for breach of contract under LMRA § 301 cannot be asserted against the National Union. Plaintiff concedes that the National Union was not a signatory[1] to the initial agreement but argues that the Local Union is not an autonomous labor organization, but rather, that it is made an "inseparable part" of the National Union by its by-laws. The relationship between the National Union and the Local Union as set out in the by-laws does not make the National Union responsible for claims arising out of the termination of an agreement that the National Union was not a party to or where it did not act in complicity with the Local Union. Vicarious liability is not established by mere reference to an institutional document. *See Carbon Fuel Co. v. United Mine Workers,* 444

U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979) (national union that signs contract is not responsible for wildcat strike by local union); *Molded Materials Co. v. IUE,* 418 F.Supp. 548 (W.D.Pa.1976) (where no officer of international union is involved, and only local is a party to the contract, there is no vicarious liability).

■ Plaintiff contends that the execution of the interim agreement gives the Court jurisdiction over the National Union. This contention is based on the signature of Doris Turner which is found on the interim agreement immediately below the designation "NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, RWDSU, AFL–CIO." Turner swears by affidavit that she is not the President of the National Union as is claimed by plaintiff. A determination of this controversy is unnecessary for the purpose of this motion to dismiss. The interim agreement only affects the continuation of welfare fund benefits during the negotiations for a new contract. It explicitly states that during the interim period there will be "no agreement in effect binding the parties." Thus, even if the signer of the interim agreement were an officer of the National Union, the interim agreement does not erect a collective bargaining relationship or agreement between the National Union and plaintiff. The only contract that could give rise to a § 301 lawsuit was the initial contract between the Local Union and plaintiff.

■ As stated above, the National Union was not a party to the initial agreement. Moreover, the complaint does not allege that the National Union induced a breach of the initial agreement. All of the conduct that allegedly injured plaintiff occurred after the termination of the initial contract. While plaintiff does allege that negotiations for the renewal of the agreement did not begin until August 15, 1980, later than the ninety day period required by contract, it does not claim that the delay was due to the

---

1. The Court is aware that *employees* are entitled to sue individually under § 301, even though they are not signatories to the agreement. *Santos v. District Council of New York*

*City,* 547 F.2d 197 (2d Cir.1977). This does not create a right of action for an employer against a national union that is not a signatory.

National Union nor that it caused any injury. The allegations in the first six counts fail to state a contractual claim against the National Union.

■ Since there is no contractual relationship between the National Union and plaintiff, it is unnecessary to decide whether this Court has concurrent jurisdiction to decide claims which would also constitute unfair labor practices and would thus fall within the jurisdiction of the National Labor Relations Board. There is no question that, if the claims in the first six causes of action are examined with the understanding that no contract existed between plaintiff and the National Union, the NLRB has exclusive jurisdiction to decide claims that merely allege unfair and illegal bargaining techniques. *See San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959).

Claims One through Six are therefore dismissed against the defendant National Union. On the face of the complaint as amended, it does not appear that these claims were asserted against the defendant Funds. Since the Funds were in no way parties to the contract, the first six causes of action cannot properly be raised against them.

*IV. The Antitrust Claims.*

■ Plaintiff alleges that the National Union conspired with the Funds to withhold information from plaintiff during the negotiations. Even if true, this claim is exempt from antitrust scrutiny pursuant to 15 U.S.C. § 17, the so-called labor exemption. Counts Seven and Eight are therefore dismissed.

■ All parties agree that a union may lose its antitrust exemption if it combines with a non-labor entity for the purpose of driving a competitor out of business and not for a legitimate purpose. *Connell Const.*

Co. *v. Plumbers and Steamfitters Local No. 100,* 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975). A jointly trusteed labor-management trust fund, whose assets can only be used for the exclusive benefit of the employees pursuant to the Labor Management Relations Act and E.R.I.S.A. is not a non-labor entity nor can it be considered to be a competitor of an employer. The *Connell* exception to the labor exemption does not apply in this case. Similar reasoning is found in *H.A. Artists & Ass'n v. Actor's Equity Ass'n,* 451 U.S. 704, 101 S.Ct. 2102, 68 L.Ed.2d 558 (1981), where the Court held that an agreement between a union and independent theatrical agents was not an agreement between a union and a non-labor group because the nature of the industry dictated that the union could not guarantee its members' wages unless it controlled the booking agents. The Supreme Court found the antitrust exemption fully applicable. Since the Labor Management Relations Act requires that pension funds be jointly administered to avoid abuse, the only way that the union can provide for pensions and welfare is to enter into agreements with organizations such as the Funds. Therefore the labor exemption is fully applicable to agreements between the National Union and the Funds.[2]

*V. The E.R.I.S.A. Claim.*

■ Plaintiff alleges that the Funds' failure to timely provide plaintiff with requested financial data and collective bargaining information was a breach of the Funds' fiduciary duty under Title I, Section 404(a)(1)(A) and (B) of the Employee Retirement Income Security Act of 1974 as amended (E.R.I.S.A.). Plaintiff claims that this breach contributed to the financial detriment and business ruin of the plaintiff.

Plaintiff lacks standing to sue the Funds under 29 U.S.C. § 1132. Section 1132 of

---

**2.** Even if there were no labor exemption, the Court is not convinced that plaintiff can demonstrate that a conspiracy between non-competitors such as the National Union and the Funds is sufficient to state an antitrust cause of action. *See, e.g., Webster County Memorial Hosp. v. UMW,* 536 F.2d 419, 420 (D.C.Cir. 1976) (per curiam); *Austin v. House of Vision, Inc.,* 404 F.2d 401 (7th Cir.1969). Cases cited by plaintiff do not support its contention that the defendant Funds and the National Union are competitors within the meaning of the antitrust laws.

E.R.I.S.A. states that civil actions can only be brought by participants, beneficiaries or fiduciaries of the Funds. As defined in the statute none of these terms explicitly includes the employer. *See* 29 U.S.C. § 1002. Lack of specific inclusion in the statute defeats standing. *See Pressroom Unions v. Continental Assurance Co.,* 82 Civ. 578 (S.D. N.Y. slip op. June 4, 1982); *Rheingold Breweries Pension Plan v. Pepsico, Inc.,* 81 Civ. 1561 (S.D.N.Y. slip op. November 17, 1981).

Plaintiff relies on *Fentron Indus., Inc., v. National Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982) to support its claim of standing. In *Fentron,* the employer was suing *on behalf* of its employees to restore pension credits to their accounts. In the present case, plaintiff is not suing on behalf of the employees. This Court is persuaded by Judge Conner's decision in *Pressroom Unions* which explicitly rejects *Fentron* because an omission by Congress of an entity's right to sue should be strictly construed.

Finally, plaintiff is incorrect in asserting that it can sue the Funds as third party beneficiaries to the collective bargaining agreement, even if it lacks standing to sue them under E.R.I.S.A. A third party action against a benefit fund is improper under § 301 since a money judgment against a labor organization is only enforceable against the organization and not against the individual members. A judgment against a union welfare fund is barred since it is effectively a judgment against the individual members. *Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960).

## VI. Conclusion.

Accordingly, defendants' motions to dismiss under Rule 12 of the Federal Rules of Civil Procedure are granted. Plaintiff's complaint against the National Union and the Funds is dismissed with prejudice.

SO ORDERED.