Richard O. LOENGARD, Jr., et al., Plaintiffs,

v.

SANTA FE INDUSTRIES, INC., et al., Defendants.

No. 82 Civ. 7919 (KTD).

United States District Court,
S.D. New York.

July 9, 1986.

As Amended Sept. 12, 1986.

Leventritt Lewittes & Bender, Garden City, N.Y., for plaintiffs; Sidney Bender, of counsel.

Rogers & Wells, New York City, for defendants; Guy Quinlan, of counsel.

MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs bring this action pursuant to New York's Martin Act, Gen.Bus.Law § 352–c (McKinney 1984). Plaintiffs are minority shareholders who were "cashed out" pursuant to a 1974 short-form merger between Kirby Lumber Corporation ("Kirby") and Santa Fe Natural Resources, Inc. ("Resources"). The defendants are Kirby Forest Products, Inc. (formerly known as

Kirby Lumber Corporation), Santa Fe Industries, Inc. ("Santa Fe"), and Resources. Jurisdiction is based on diversity of citizenship.[1] 28 U.S.C. § 1332.

Plaintiffs move for summary judgment, pursuant to Fed.R.Civ.P. 56, or alternatively, for partial summary judgment on the issue of defendants' liability and for a separate trial to determine damages. Defendants cross-move for summary judgment alleging plaintiffs have failed to state a claim under the Martin Act. Defendants further request the imposition of sanctions pursuant to Fed.R.Civ.P. 11. For the following reasons plaintiffs' motions are denied and defendants' motion for summary judgment is granted. Defendants' request for sanctions, however, is denied.

## FACTS

The merger in this case has now been litigated for eleven years. Although familiarity with previous decisions concerning this merger is assumed,[2] some background facts, stated as briefly as possible, are nevertheless required. On July 11, 1974, Forest Industries, Inc., a wholly-owned subsidiary of Resources, was created for the purposes of the merger. At the time, Kirby was a 95 percent subsidiary of Santa Fe. Resources was, and is, a wholly-owned subsidiary of Santa Fe. On July 31, 1974, Santa Fe completed a short-form merger between Forest Industries, Inc. and Kirby pursuant to Del.Code Ann.Tit. 8, § 253 (1983). As a result of the merger, Resources acquired the 5 percent interest in Kirby not previously owned by Santa Fe.

After the merger and pursuant to Delaware's short-form merger statute, Kirby's minority shareholders were given notice of their right to "cash out" at $150 per share, or to elect a judicial appraisal hearing. Under Delaware law, the exclusive remedy for minority shareholders who dispute the fair value of their shares is to seek a judicial appraisal. *Weinberger v. UOP, Inc.*, 457 A.2d 701, 715 (Del.1983).

The notification sent to Kirby's minority shareholders contained information about Kirby's business condition and the estimated value of its assets. An appraisal by Morgan Stanley & Company, Inc., estimating the earnings value of the Kirby stock at $120 per share was also included in the notice.

Plaintiffs accepted Resources' offer to pay $150 per share while other minority shareholders elected an appraisal. In the appraisal proceeding, Kirby's asset value was determined to be $456 per share and the fair market value of the shares was found to be $254.40. *Bell v. Kirby Lumber*, 413 A.2d 137, 139 (Del.1980). Plaintiffs were also awarded $99.57 per share in prejudgment interest.

## DISCUSSION

Plaintiffs claim the method used to cash them out, although done in accordance with the Delaware short-form merger statute, operated as a fraud against them because: (1) there was no legitimate business purpose for the merger; (2) the minority shareholders were not given prior notice of it; and (3) their shares were greatly undervalued. Regarding the latter point, plaintiffs claim that defendants are collaterally estopped from challenging either the fact of the undervaluation or the value of the shares determined by the appraiser and upheld in *Bell*. Even assuming plaintiffs' collateral estoppel argument is correct, that fact alone would not be determinative of the defendants' liability under the Martin Act.

### Martin Act

Plaintiffs argue that the Martin Act prohibits a broader range of conduct than 15

1. Plaintiffs are New York residents and each defendant is a Delaware corporation.

2. The previous decisions are: *Green v. Santa Fe Industries, Inc.*, 391 F.Supp. 849 (S.D.N.Y.1975); *Green v. Santa Fe Industries, Inc.*, 533 F.2d 1283 (2d Cir.1976); *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *Bell v. Kirby Lumber Corp.*, 413 A.2d 137 (Del.1980); *Green v. Santa Fe Industries, Inc.*, 88 F.R.D. 575 (S.D.N.Y.1980); *Loengard v. Santa Fe Industries, Inc.*, 573 F.Supp. 1355 (S.D.N.Y. 1983); and *Green v. Santa Fe Industries, Inc.*, 576 F.Supp. 269 (1983).

U.S.C. § 78j(b) and Securities & Exchange Commission ("SEC") Rule 10b–5. The same short-form merger challenged here was previously found not to violate Rule 10b–5, because the merger involved no deception or manipulation. *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 474, 97 S.Ct. 1292, 1301, 51 L.Ed.2d 480 (1977).

The Martin Act prohibits the following conduct in a variety of securities transactions:

1. It shall be illegal and prohibited for any person, partnership, corporation, company, trust or association, or any agent or employee thereof, to use or employ any of the following acts or practices:

(a) Any fraud, deception, concealment, suppression, false pretense or fictitious or pretended purchase or sale; ....

N.Y.Gen.Bus.Law § 352–c.

Plaintiffs essentially argue that, because the Martin Act separately lists both fraud and deception, it prohibits conduct which is not deceptive but which is nevertheless fraudulent. Plaintiffs further assert that Delaware's short-form merger procedures fall into this category.

Plaintiffs correctly argue that the Martin Act is to be interpreted broadly to best effectuate the purposes of the Act. *People v. Federated Radio*, 244 N.Y. 33, 38–40, 154 N.E. 655 (1926). That broad interpretation, however, is not a license to include within the ambit of its prohibitions conduct which is not fraudulent and was never intended to fall within the Act's coverage.

Fraud is defined as a false representation or omission "which deceives and is intended to deceive another so that he shall act upon it to his legal injury." Black's Law Dictionary (4th ed. 1968). Although intent to deceive is not required under the Martin Act, some "tendency to deceive" is necessarily included within the plain meaning of fraud. It is axiomatic that when undertaking statutory interpretation a word should be given its plain and ordinary meaning. Although plaintiffs would argue the contrary, courts interpreting the Martin Act have not failed to adhere to this princi-

ple. Fraud, under the Martin Act, has consistently been interpreted as conduct with a "tendency" to deceive or mislead.

In *People v. Lexington Sixty-first Associates.*, 38 N.Y.2d 588, 381 N.Y.S.2d 836, 840, 345 N.E.2d 307 (1976), the New York Court of Appeals held that the Martin Act prohibited "deceitful practices". In that case the owners of a rent stabilized building leased apartments to phony tenants who never actually lived there. The owners then claimed these "tenants" were among the required 35 percent who agreed to purchase their apartments under a co-operative conversion scheme, and included this information in a public offering. The defendants' conduct was not only deceptive, it was illegal. The Court of Appeals stated:

The purpose of the [Martin Act] is to prevent all kinds of fraud in connection with the sale of securities and commodities and to defeat all related schemes whereby the public is exploited, the terms "fraud" and "fraudulent practices" to be given a wide meaning so as to embrace all deceitful practices contrary to the plain rules of common honesty, including all acts, even though not originating in any actual evil design to perpetrate fraud or injury upon others, which do tend to deceive or mislead the purchasing public.

*Lexington* 381 N.Y.S.2d at 840, 345 N.E.2d 307 (citations omitted).

In *Bishop v. Commodity Exchange, Inc.*, 564 F.Supp. 1557, 1565 (S.D.N.Y. 1983), another case cited by plaintiffs, the court held that the abuse of the Commodity Exchange's rulemaking power for the purposes of market manipulation would be a "deceitful practice" prohibited by the Martin Act.

The Loengards rely heavily on *People v. Concord Fabrics, Inc.*, 83 Misc.2d 120, 371 N.Y.S.2d 550 (Sup.Ct.N.Y.), *aff'd*, 50 A.D.2d 787, 377 N.Y.S.2d 84 (1975) in support of their argument that the Kirby merger constitutes a fraud. Plaintiffs overlook two important factors, however,

which distinguish *Concord* from the instant case. First, there was deception in *Concord* because a relative of one of the majority shareholders was also the appraiser who determined the value of the minorities' shares and thus, the amount they would be paid pursuant to the merger. *Concord* 83 Misc.2d at 121, 371 N.Y.S.2d 550. Second, it has been held subsequently that *Concord* does not apply to suits brought by private litigants, but only to cases brought by the Attorney General for injunctive relief. *Halle & Steiglitz v. Kolen,* Blue Sky L.Rep. (CCH) ¶ 68,436, ¶ 71,-435 (N.Y.Sup.Ct.1978). For these reasons, *Concord* does not advance the plaintiffs' position.

Plaintiffs have also brought to my attention a recent decision by the Delaware Supreme Court, *Rabkin v. Philip Hunt,* 498 A.2d 1099 (Del.1985), in which the Court reassessed the exclusivity of the appraisal remedy under Delaware law. In *Rabkin,* the plaintiff minority shareholders argued that the defendant company had fraudulently avoided paying a $25.00 per share price for plaintiffs' shares by misrepresenting its intentions to purchase 100 percent of the target company's shares. The defendant company purchased 63.4 percent of the target company's shares and thereafter contracted to pay $25.00 per share for the rest of its shares, if purchased within the following year. The defendant company had every intention of purchasing the outstanding shares of the target company, however, to avoid paying the $25.00 contract price, it misrepresented its intentions in a press release and timed the purchase so that it did not occur until after the one-year contractual period had elapsed. Under these circumstances, the Delaware Supreme Court held that the dispute did not primarily concern the fair value of the shares, for which an appraisal would be the appropriate remedy, but was in fact an action to enforce a contractual right that was avoided by the defendant's manipulative conduct. *Rabkin* at 1105. The court held that the plaintiffs had stated a cause of action sufficient to survive a motion to dismiss. The obvious difference between *Rabkin* and the instant case is that *Rabkin* involved deception, whether it be called fraud, bad faith, overreaching, or manipulation, and the instant case does not.

Plaintiffs try to turn what is essentially a dispute over the valuation of their shares into a dispute over the fairness of the entire transaction by complaining they received no prior notice of the intended merger. As has often been stated, the Delaware short-form merger statute does not require that minority shareholders receive prior notice of the intended merger because to do so would be simply a waste of time. With 95 percent of the shares voting for the merger, the 5 percent minority would have no chance of preventing it. Thus, in such cases, the minority shareholders must seek an appraisal.

In the context of overall fairness, plaintiffs further complain that the merger was a "self-motivated takeover", enriching the majority at the minorities' expense and lacked a proper business purpose. Under Delaware law the desire to go private is sufficient reason for undertaking the merger. In the absence of fraudulent or deceptive conduct, merely concentrating a company's control in the hands of a few is, by itself, an insufficient ground for complaint. *Weinberger* at 715; *Stepak v. Scharffenberger,* No. 85–6530, slip op. at 5 (Del.Ch. Aug. 9, 1985).

The Kirby merger was carried out in strict compliance with Delaware law. The information statement contained the relevant financial data, the appraised value of the shares, and the appraised value of Kirby's assets. In short, there was full disclosure. Moreover, no misrepresentations or material omissions were made. Under the circumstances, there is simply no fraud. Plaintiffs have failed to establish the unfairness of the merger, thus, their sole remedy was to seek an appraisal. *Weinberger* at 714.

Without a showing of some kind of fraudulent conduct, plaintiffs have failed to state a claim under the Martin Act. Thus, as there is no genuine issue for trial in this

case, defendants' motion for summary judgment is granted. Plaintiffs' motions are denied.

Although plaintiffs have failed to establish their claim, I do not find they have acted in bad faith or for dilatory purposes. Thus, defendants' request for sanctions pursuant to Fed.R.Civ.P. 11 is denied.

SO ORDERED.