Irwin **POPKIN**, Plaintiff-Appellant,

v.

Warner B. **BISHOP** et al., Defendants-Appellees.

Nos. 479, 480, Dockets 71–2027, 71–2133.

United States Court of Appeals, Second Circuit.

Argued Jan. 18, 1972.

Decided June 29, 1972.

Martin A. Coleman, New York City (Rubin Wachtel Baum & Levin, Stephen A. Marshall and Carl Robert Aron, on brief), for plaintiff-appellant.

Robert B. von Mehren, New York City (Debevoise, Plimpton, Lyons & Gates, Eldon V. C. Greenberg, on brief), for defendants-appellees The Equity Corp. and Michael D. Dingman.

Simpson Thacher & Bartlett, James G. Greilsheimer and Ronald A. Zanoni, New York City, for defendant-appellee Bell Intercontinental Corp.

Palmer & Serles, William A. Metz, New York City, for defendant-appellee Frye Industries, Inc.

Hughes Hubbard & Reed, Powell Pierpoint, New York City, for defendant-appellee The Wheelabrator Corp.

Before SMITH, FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

Irwin Popkin appeals from an order of the United States District Court for the Southern District of New York, Sylvester J. Ryan, J., dismissing his complaint which alleged a violation of Rule 10b–5. Appellant, a shareholder of Bell Intercontinental Corporation (Bell), commenced this derivative action in June 1971 to enjoin the proposed merger of Bell and its two subsidiaries into The Equity Corporation (Equity), the majority shareholder of Bell. Appellant sought injunctive relief on the ground that the exchange ratios in the proposed merger agreement were unfair to the minority shareholders of Bell and its subsidiaries as well as to the companies themselves. Allegedly, by proposing those ratios Equity and various individual officers and directors of Bell breached a variety of fiduciary duties. According to appellant, such breaches entitled him to injunctive relief under Rule 10b–5 despite the complete disclosure of the merger terms. We do not agree, and affirm the dismissal of the complaint.

I

The proposed merger here at issue was consummated on November 4, 1971. Prior to that date, Bell was a holding company which owned 66.1 per cent of the common stock of Frye Industries (Frye) and approximately 81 per cent of the voting stock of The Wheelabrator Corporation (Wheelabrator). All three were Delaware corporations. The common stock of Bell was listed on the New York Stock Exchange, while the common stock of Frye and Wheelabrator were listed on the American Stock Exchange. Equity, also a Delaware corporation with its stock listed on the American Stock Exchange, was a holding company which owned 51.7 per cent of Bell's common stock. Concededly, Equity controlled Bell and through Bell, Wheelabrator and Frye. According to the Joint Proxy Statement issued in August 1971 in connection with the proposed merger: Equity "controls the managements of Bell, Wheelabrator and Frye" and "has sufficient voting power to effect the vote required for adoption of the Merger Agreement. . . ."

Equity was thus in a commanding position to orchestrate the proposed merger. It should be noted, however, that the decision to merge was not made by Equity alone. The merger was required by one of the principal terms of the Stipulation of Settlement filed in an earlier consolidated derivative action, Kaufman v. Jeffords (New York Supreme Court, N.Y. County) (Index No. 01615/1967). That action, brought by shareholders of Equity,[1] was principally concerned with alleged wrongdoing and mismanagement by certain officers and shareholders of Equity. According to the Referee appointed to investigate the proposed settlement, plaintiffs in that action insisted "that there be a simplification of the Equity system corporate structure, including an Equity-Bell merger or some other simplification basis . . .," presumably to avoid the possibility that future misconduct could take place in the comfortable darkness of a corporate labyrinth.[2]

1. One plaintiff was also a shareholder of Bell, although the record does not disclose precisely how much stock he held in either Bell or Equity. The action was technically brought on behalf of Bell as well as Equity.

2. Referee's Report at 74. Appellant claims that defendants in Kaufman "engraft[ed]" the merger proposal onto the settlement in order to "obtain the imprimatur of judicial approval without subjecting themselves to a bona fide adversary proceeding" on the issue of fairness. Appellant's brief at 38.

The crux of the Merger Agreement was the exchange ratios. In March 1971, the investment banking firm of Dillon, Read & Co., Inc. was retained by Bell, Frye and Wheelabrator to evaluate the four companies involved and to recommend ratios for the conversion of common stock of Bell, Frye and Wheelabrator into shares of Equity common stock. In May 1971, Dillon, Read made its recommendations and in that same month the respective boards of the corporations approved the exchange ratios recommended. Those ratios were incorporated into the Merger Agreement, dated August 11, 1971. As already indicated, in June 1971, appellant had commenced this action in the United States District Court for the Southern District of New York, seeking preliminary and permanent injunctive relief against the proposed merger.[3] The suit was brought derivatively on behalf of Bell and its shareholders and double-derivatively on behalf of Wheelabrator and Frye and their respective shareholders.

In September 1971, after the Joint Proxy Statement had been sent out but before the shareholders' vote, appellant moved for summary judgment or, in the alternative, for preliminary injunctive relief. Appellees cross-moved for summary judgment. On November 3, 1971, Judge Sylvester J. Ryan denied appellant's motion for a preliminary injunction, although he did temporarily stay consummation of the merger for six days.[4] The judge further concluded that appellant's motion for summary judgment

must be denied for the complaint does not state a claim under Section 10(b) and Rule 10b–5 upon which relief can be granted, and the merger exchange

ratios have been adjudged to be fair and reasonable with respect to the public shareholders of Bell, by a Court of competent jurisdiction.[5]

The second ground of Judge Ryan's decision refers to the state court order, entered in October 1971, approving the settlement in Kaufman v. Jeffords, *supra*. Apparently because the time to appeal from that order had not expired, Judge Ryan postponed any further rulings. On November 17, 1971, however, after noting that the state court order had become "final," Judge Ryan granted appellees' "motion to dismiss" "[f]or the reasons set forth in my memorandum of November 3, 1971," and ordered that a "judgment of dismissal for lack of jurisdiction" be entered. This appeal followed.

## II

■ The complaint in this action contains five separate counts which in essence allege that the exchange ratios incorporated into the Merger Agreement are "grossly inadequate" to Bell, Wheelabrator, Frye and their respective shareholders—other than Equity. Appellant has argued that "as a matter of simple arithmetic" the exchange ratios are unfair and amount to an attempt by Equity to retain for itself a "grossly disproportionate share" of the three corporations' assets.[6] According to appellees, the mathematical attack upon those ratios is simplistic, "entirely unrelated to the realities of the merger itself."[7] The fairness or unfairness of the exchange ratios is a complicated issue, but we do not believe that it must be resolved here. We are willing to assume that appellant is correct and that the exchange ratios are unfair. In addition,

---

3. Apparently a second action was also brought in June 1971 in the same court by a shareholder of Wheelabrator. Falik v. The Wheelabrator Corp. (S.D.N.Y.). The record does not disclose the present status of that litigation.

4. On November 4, 1971, this court, upon motion of appellees, vacated the stay and the merger was consummated.

5. Unreported memorandum filed November 4, 1971, at 12–13.

6. Appellant's brief at 9; Affidavit of Martin A. Coleman, dated Sept. 2, 1971, at 2.

7. Appellees' brief at 41.

we agree that Equity's ability to push through the merger—with or without any other shareholder's vote—cannot by itself defeat a claim for federal injunctive relief. See Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L. Ed.2d 460 (1967); cf. Mills v. Electric Auto-Lite Co., 396 U.S. 375, 385 n. 7, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970).[8] Having said all this however, we still conclude that appellant's action was properly dismissed.

The complaint contains no allegation or hint of any misrepresentation by defendants or of a failure on their part to disclose any material fact in connection with the merger proposal. Moreover, appellant did not contend in the district court that the Joint Proxy Statement issued in connection with the proposal was in any way false or misleading. As already indicated, appellant brought suit well before there ever was a Joint Proxy Statement. More significantly, in the district court, although appellant pointed to one alleged material omission, he was "willing to assume, *arguendo*, for the purpose of this motion *only*, that the Proxy Statement made a full and fair disclosure."[9] Both in the district court and on appeal, appellant has relied heavily—almost exclusively—on the actual contents of the Proxy Statement in his attempt to demonstrate the unfairness of the merger proposal. Thus, the record before us hardly presents a picture of deception or nondisclosure, ordinarily alleged in private actions under Rule 10b–5. See Superintendent of Ins.

v. Bankers Life & Cas. Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971); Heit v. Weitzen, 402 F.2d 909 (2d Cir. 1968), cert. denied, 395 U.S. 903, 89 S. Ct. 1740, 23 L.Ed.2d 217 (1969).[10] Nonetheless, appellant argues that "Rule 10b–5 is more than a disclosure provision" and that the Rule affords minority shareholders protection against overreaching by majority shareholders and directors "[w]hether the facts remain hidden from the minority or are ultimately revealed in a Proxy Statement."[11] On the facts of this case, we do not think that appellant is correct.

Unquestionably this court has recognized that Rule 10b–5 reaches beyond traditional stock transactions and into the board rooms of corporations. See, e. g., Drachman v. Harvey, 453 F.2d 722 (1972) (en banc); SEC v. Fifth Avenue Coach Lines, Inc., 435 F.2d 510 (1970); Schoenbaum v. Firstbrook, 405 F.2d 215 (1968) (en banc), cert. denied, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219 (1969); Vine v. Beneficial Finance Co., 374 F.2d 627, cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); Ruckle v. Roto American Corp., 339 F.2d 24 (1964). We also recognize that assertions by a defendant that the misconduct complained of "really" amounts to "just" corporate mismanagement will not cut off a plaintiff's federal remedy. Where Rule 10b–5 properly extends, it will be applied regardless of any cause of action that may exist under state law. 15 U.S.C. § 78bb; see Vine v. Beneficial Finance Co., supra, 374 F.2d at 635–636.

8. The district court, citing Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952), concluded that appellant failed to meet the purchaser-seller requirement of the Rule. That ruling was erroneous and appellees do not contend otherwise. See Vine v. Beneficial Finance Co., supra.

9. Reply Memorandum of Law in Support of Plaintiff's Motion, filed Sept. 28, 1971, at 33 n.*. On appeal, appellant has briefly indicated other alleged omissions or false representations. Appellant's brief at 30–32. We intimate no

view on these assertions other than to note that the complaint contains no comparable allegations and, in view of the concession below, the argument was not pressed in the district court.

10. Any lingering doubt about the propriety of implying a private right of action under section 10(b) of the Exchange Act and Rule 10b–5 seems to have finally been dispelled by the Supreme Court in *Superintendent of Ins.*, supra, 404 U.S. at 13 n. 9, 92 S.Ct. 165, 30 L.Ed.2d 128.

11. Appellant's brief at 20, 22.

It is also true that is such decisions as *Drachman* and *Schoenbaum*, which involve what has been called the "new fraud,"[12] this court has focused on whether improper self-dealing itself can be a proper basis for a Rule 10b–5 action.[13] In many, if not most, corporate self-dealing transactions touching securities, state law does not demand prior shareholder approval. In those situations, it makes sense to concentrate on the impropriety of the conduct itself rather than on the "failure to disclose" it because full and fair disclosure in a real sense will rarely occur. It will be equally rare in the legal sense once the view is taken—as we did in *Schoenbaum* —that under federal securities law disclosure to interested insiders does not prevent a valid claim that fraud was committed upon "outsiders" (such as minority shareholders) whatever the requirements of state corporate law may be. Thus, in *Schoenbaum*, a shareholder alleged that the board of directors withheld information from the minority shareholders and the public while authorizing a sale of 500,000 shares of treasury stock to the controlling shareholder, Aquitaine Company, at a "vastly inadequate" price. 405 F.2d at 218. In his dissent from the original panel opinion, Judge Hays refused to impute to the minority shareholders the knowledge of inside information held by the directors and controlling shareholder. He could then conclude that the "corporation"—really the minority shareholders —were deceived by its directors:

In order to establish fraud it is surely not necessary to show that the directors deceived themselves. It must be enough to show that they deceived the shareholders, the real owners of the property with which the directors were dealing. Deception of the shareholders (with the exception of the majority stockholder which was a party to the transactions) is established by showing that the directors withheld from them information that would have revealed the true value of the treasury stock.

405 F.2d at 215. In the majority opinion for this court on the rehearing en banc, Judge Hays suggested that the alleged improper self-dealing itself constituted a violation of Rule 10b–5,[14] but he repeated his conclusion:

Moreover, Aquitaine and the directors of Banff were guilty of deceiving the stockholders of Banff (other than Aquitaine).[15]

Thus, it seems clear that our emphasis on improper self-dealing did not eliminate non-disclosure as a key issue in Rule 10b–5 cases. Section 10(b) of the Exchange Act and Rule 10b–5 are designed principally to impose a duty to

12. See Bloomenthal, From Birnbaum to Schoenbaum: The Exchange Act and Self-Aggrandizement, 15 N.Y.L. Forum 332 (1969); Note, Schoenbaum v. Firstbrook: The "New Fraud" Expands Federal Corporation Law, 55 Va.L.Rev. 1103 (1969).

13. See also Levin v. Great Western Sugar Co., 406 F.2d 1112 (3d Cir.), cert. denied, 396 U.S. 848, 90 S.Ct. 56, 24 L.Ed. 2d 97 (1969), a case close on its facts to the present case.

14. 405 F.2d at 219–220:
    In the present case it is alleged that Aquitaine exercised a controlling influence over the issuance to it of treasury stock of Banff for a wholly inadequate consideration. If it is established that the transaction took place as alleged it constituted a violation of Rule 10b–5, subdivision (3) because Aquitaine engaged in an "act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

15. 405 F.2d at 220. It is of interest that the Securities and Exchange Commission (SEC), arguing as amicus in *Schoenbaum*, took the position that "it is the added element of deceptive conduct . . . [that] brings the securities laws into play." SEC's brief as Amicus Curiae on Rehearing en banc at 38, *Schoenbaum*, supra (Dkt. No. 31408). Regrettably, the SEC declined our invitation in this case to file an amicus brief due to the inability of the Commissioners to agree upon a position. (One Commissioner disqualified himself.)

disclose and inform rather than to become enmeshed in passing judgments on information elicited. See SEC v. National Securities, Inc., 393 U.S. 453, 461–464, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969); SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 847–848 (2d Cir. 1969) (en banc), cert. denied, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). This design has special relevance to merger transactions that, under state law, must be subjected to shareholder approval. In the context of such transactions, if federal law ensures that shareholder approval is fairly sought and freely given, the principal federal interest is at an end. Underlying questions of the wisdom of such transactions or even their fairness become tangential at best to federal regulation. See Mills v. Electric Auto-Lite Co., 396 U.S. 375, 381–385, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). And when what is sought is injunctive relief, a federal court of equity should regard this consideration as controlling. Thus, in the present case, we believe that once appellant admitted that defendants fully and fairly disclosed all material facts surrounding the merger to all interested parties, including the minority shareholders, appellant's claim under Rule 10b–5 for injunctive relief must fall.

Appellant argues that disclosure is irrelevant when, as here, the minority shareholders are powerless to prevent the merger. We do not agree. In this case, armed with the information fully disclosed under compulsion of the federal proxy regulations and Rule 10b–5, appellant was placed in a position to sue under state law to enjoin the merger as unfair. Indeed, under the applicable Delaware law, the "entire fairness" of the merger would have to pass "the test of careful scrutiny by the courts." Sterling v. Mayflower Hotel Corp., 33 Del.Ch. 293, 93 A.2d 107, 110 (1952).[16] The federal injunctive remedy appellant sought could offer him no greater protection. We realize that cases based upon Rule 10b–5 in which a court can properly find full and fair disclosure may not be frequent since self-dealing schemes and transactions are by nature secretive. Certainly, concessions by plaintiffs that defendants made such disclosure will be even rarer. But when there has been such disclosure of a merger's terms, its seems unwise to invoke federal injunctive power, particularly since doing so might well encourage resort to the federal courts by any shareholder dissatisfied with a corporate merger. We affirm the dismissal of the complaint.[17]

## III

Had the district court simply dismissed the complaint our already extended discussion could end here. However, in view of the present record, an additional observation is required. In affirming the dismissal of the complaint we were not required to reach the question whether appellant is collaterally estopped from litigating the fairness of the exchange ratios because of the judicially approved settlement in Kaufman v. Jeffords. The order approving that settlement did specifically decree that "the respective exchange ratios . . . are approved and confirmed in all respects as fair and reasonable. . . ." Nonetheless, we have serious doubt that the settlement estops appellant, a share-

16. See Cary, Cases and Materials on Corporations 1710–11 (4th ed. 1969). Where the right to appraisal and payment for shares is the exclusive shareholder remedy under state law, the federal disclosure provisions are still not "nugatory." They will help ensure that shareholders have the information necessary for an intelligent exercise of their appraisal rights.

17. We do not hold that failure to allege non-disclosure would itself justify dismissal of a complaint challenging a merger transaction under Rule 10b–5. But where it appears from the record that full and fair disclosure was made, or where, as here, appellant in cross-motions for summary judgment was willing to concede that there was such disclosure, we think a Rule 10b–5 action for injunctive relief must fail.

holder of Bell, from attacking the exchange ratios in another suit, particularly since the only named plaintiff who owned Bell stock was also a shareholder of Equity. In any event, the issue of estoppel remains to be actually litigated.

Judgment affirmed.