**SECURITIES AND EXCHANGE COMMISSION,**
Plaintiff-Appellee-Cross-Appellant,

v.

**PARKLANE HOSIERY CO., INC., and Herbert N. Somekh,**
Defendants-Appellants-Cross-Appellees.

Nos. 1395, 1290, Dockets 77–6012 and 77–6023.

United States Court of Appeals, Second Circuit.

Argued May 23, 1977.

Decided July 8, 1977.

Harvey L. Pitt, SEC, Washington, D. C. (Paul Gonson, Daniel L. Goelzer and Edward A. Scallet, SEC, Washington, D. C., on the brief), for plaintiff-appellee-cross-appellant.

Irving Parker, New York City (Joseph N. Salomon, Jeffrey I. Slonim and Jacobs, Persinger & Parker, New York City, on the brief), for defendants-appellants-cross-appellees.

Before WATERMAN and TIMBERS, Circuit Judges, and MEHRTENS, District Judge.*

MEHRTENS, District Judge:

This action was brought by the Securities and Exchange Commission against Parklane Hosiery Co., Inc. and Herbert N. Somekh under Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a) and Sections 10(b), 13(a) and 14(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), 78m(a) and 78n(a) and the various rules promulgated thereunder.[1]

At issue is whether the district judge erred in finding Parklane's proxy statement to be defective in three respects and in denying injunctive relief to the Commission.

We affirm the order of the district judge, reported at 422 F.Supp. 477 (S.D.N.Y.1976).

In 1968, Parklane, a corporation of approximately 400 retail outlets selling women's apparel, sold 300,000 shares of common stock to the public at $9 per share. This case grew out of a merger consummated in October 1974 whereby Parklane was returned to its status as a private company, and its shares were repurchased at $2 per share. After a four-day hearing, the district judge held that the proxy statement seeking approval from Parklane's public shareholders for the merger which extinguished their stake in the company was materially false and misleading since it concealed from the shareholders that:

(1) the purpose of the transaction effecting their extinction was to enable Somekh, the president and principal shareholder of Parklane, to discharge his personal debts from the Parklane treasury;

(2) Parklane had engaged in negotiations suggesting that a leasehold held by the company might be saleable for an amount which would net Parklane $300,000; and

(3) the independent appraisal of Parklane's shares reflected in the proxy statement had been conducted without the benefit of several crucial pieces of information, including Somekh's personal plans for the company's assets and the potential cash windfall accruing from the leasehold.

---

* Sitting by designation, from the Southern District of Florida.

1. Section 17(a) of the Securities Act and Section 10(b) of the Securities Exchange Act and Rule 10b–5 thereunder are commonly referred to as the antifraud provisions of the federal securities laws. Generally, they prohibit the use of fraudulently misleading representations in the purchase or sale of securities. Section 13(a) of the Securities Exchange Act and the rules thereunder require the filing of various annual and periodic reports with the Commission reflecting the current financial position of the issuer and other material information. Implicit in these requirements is the proposition that these reports not be materially false and misleading. Section 14(a) of the Securities Exchange Act and the rules thereunder police the proxy solicitations of public corporations to insure that, among other things, shareholder proxies are not obtained on the basis of materially false and misleading information.

Although the court ordered the defendants to correct the filings they had made with the Commission, which the court had found to be false and misleading, the court declined to grant the injunctive relief sought by the Commission. The defendants sought review of the district judge's findings with respect to their violations, and the Commission cross-appealed on the refusal to grant injunctive relief.

The standard for appellate review of factual findings of a court sitting without a jury is set forth in Rule 52(a) of the Federal Rules of Civil Procedure:

> "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

■ The burden is on the defendants, as the party attacking the findings of fact, to show that the findings are clearly erroneous. *Hedger v. Reynolds,* 216 F.2d 202 (2nd Cir. 1954). The Commission is entitled to the benefit of all reasonable inferences and to have the evidence viewed in the light most favorable to it. *Stacher v. United States,* 258 F.2d 112, 116 (9th Cir.), *certiorari denied,* 358 U.S. 907, 79 S.Ct. 232, 3 L.Ed.2d 228 (1958); *Crews v. Cloncs,* 432 F.2d 1259 (7th Cir. 1970).

### I. *Somekh's Personal Indebtedness*

The record supports the district judge's finding that the "overriding purpose" for the going-private scheme was to enable Somekh to repay his personal indebtedness.

Before the merger, Somekh encountered pressure for payment of personal loans totaling $1,175,000. Lacking sufficient liquid assets to meet these demands for cash, he began to consider having Parklane go private. He first considered this in late June or early July of 1974. About a month later

he began serious discussions with his attorneys regarding the feasibility of such a course.

In August 1974 Somekh had a meeting with his accountant and some creditors at which he indicated he intended to return Parklane to private status as an alternative means of liquidating his personal obligations. The proxy statement was issued as of September 24, 1974, and on October 14, 1974 the merger converting the company to privately owned status took place. Following the merger, at a December 30, 1974 meeting, Somekh's salary was increased from $90,000 to $150,000, retroactive to October 1973. The Board also authorized the corporate officers to purchase properties owned by Somekh for $1.2 million. After the merger Somekh's creditors began receiving payments.

The Commission contended that the proxy statement inadequately disclosed Somekh's true intention and underlying purpose in proposing the merger—to relieve his personal financial situation. The defendants asserted that it did adequately disclose the facts.[2]

■ We find there was substantial evidence for the district judge to find, "It is clear to me that the overriding purpose for the merger was to enable Somekh to repay his personal indebtedness. Had his finances been otherwise, the merger may never have occurred. There is not so much as a hint of Somekh's huge debts in the proxy statement. The non-disclosure is clearly established."

### II. *Negotiations with the Federal Reserve Board of New York*

The Commission also alleged that the proxy statement misrepresented the status of discussions concerning the cancellation of

---

**2.** The disclosure in the proxy statement provided:

> "If the proposed merger is consummated, the shareholders of Newco will be entitled to the benefit of all of the assets, earnings, earning capacity and cash flow of the Company. The merger will make possible a combination of the resources of the Company with those

of Mr. Somekh (who with his wife and trusts for the benefit of his children, owns approximately 86% of the stock of Newco) for the conduct of real estate activities of the type that Mr. Somekh has to date conducted individually (primarily development of garden apartments). Such a combination is presently being contemplated."

a lease of property by Parklane from the Federal Reserve Board of New York (FRB). Specifically, it claimed, and the district court found, that the assertion in the proxy statement that as to the FRB lease "there are no negotiations at present" is false and misleading as to a material fact.

Parklane had leased a parcel of land in New York City from the FRB. The land was, in turn, subleased to a franchisee of Parklane and to a third party, Jo-Ray Foods, Inc. The FRB was in the process of constructing a building on that block and hired Robert S. Curtiss to negotiate a termination of the lease. These discussions began in 1968 or 1969, and Jo-Ray Foods became a stumbling block in the conclusion of the dealings.

No significant activity transpired until October 4, 1974, when Curtiss telephoned Somekh to arrange a meeting concerning the leasehold. Curtiss testified that he and Somekh indicated their mutual desire to resolve the matter. Somekh reiterated his earlier position that $1,200,000 would be necessary to close the deal, and Curtiss indicated that he would recommend that figure to the FRB. Somekh agreed to accept $300,000 as Parklane's share of the transaction and to attempt to obtain assurances from Jo-Ray and the franchisees. On October 7, 1974 Curtiss recommended the Somekh offer to the FRB. No amendment to that effect was made to the proxy statement following the October 4th meeting.

The defendants argue that on October 4th Curtiss had no authority to make any offer on behalf of the FRB and that Somekh had no authority to make or accept an offer on behalf of Parklane's subtenants. Also, in a phone conversation within a week of the October 4th meeting, Curtiss informed Somekh that although he had recommended the $1,200,000 amount to the FRB, there were problems, and the building might not be built. Because of this, defendants argued that there was no reason to amend the proxy statement which was before the shareholders at their October 14, 1974 meeting.

■ The court found, and we concur, that the October 4th conference fell within the common usage of the term "negotiation," and thus, the unamended proxy statement was false when it stated that "there are no negotiations at present."

### III. *The Appraisal*

The third area in which the court found a failure to disclose material facts relates to the appraisal conducted by one of two investment banking firms, Thomson & McKinnon, Auchincloss and Kohlmeyer, Inc. Somekh had retained the firm to appraise the Parklane shares in connection with the merger. The appraiser was not told and was not aware of Somekh's plans to use corporate assets to reduce his personal indebtedness, or of Somekh's intention to sell real property to the corporation. He also was not informed of the negotiations with the FRB with respect to the cancellation of the leasehold. The court found that there was a failure to disclose these facts to the appraiser and that the proxy statement did not disclose the defect in the appraisal to the shareholders.

■ Upon cross-examination the appraiser modified his statements and there is some evidence that the appraisal figure may have been diminished, rather than increased by the inclusion of some of the facts found to have been withheld. The district judge, however, had the opportunity to weigh the conflicting evidence and to consider the credibility of the witnesses. We find that his decision on this issue was not clearly erroneous.

### IV. *Materiality*

■ Having affirmed the district court on its findings of misstatement and omission, the remaining issue is the materiality of those facts. A finding of materiality of the false or misleading facts or omissions must be found, pursuant to Rule 14a–9, before a violation of Section 14(a) of the Securities and Exchange Act of 1934 is found.

In *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757

(1976), the Supreme Court held that the test of the materiality of a fact depends upon a showing of a substantial likelihood, under all the circumstances, that the fact would have assumed "actual significance" in the deliberations of a reasonable shareholder.

Defendants argue that it could have been made no difference to the minority shareholders that the overriding purpose of the merger was to enable Somekh to pay a personal indebtedness, as it could have no bearing upon their choice to either accept the offering price or to exercise their right of appraisal. To support their argument that the purpose was irrelevant, defendants rely on *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977).

*Santa Fe* was a *private action for damages under Rule 10-5* involving a "short-form" merger pursuant to Delaware law whereby one corporation, which had already held 95 percent of another corporation, acquired the remaining 5 percent of the second corporation. In the process, the public shareholders were offered cash for their shares. Under the provisions of the Delaware statute, this merger could be and was, accomplished without the consent of, or advance notice to the minority stockholders. It was alleged that the acquiring corporation had violated Section 10(b) of the 1934 Act, and Rule 10b–5 thereunder, even though it was admitted by the plaintiffs that there had been full and fair disclosure. The Supreme Court disagreed, reasoning that there could be no recovery in private damage actions under the above sections in the absence of any deception, misrepresentation, or nondisclosure.

That decision is distinguishable from this case—a Commission injunctive action for violations of the proxy, periodic reporting and antifraud provisions of the federal securities laws. Contrary to the situation under the Delaware short-form merger statute, had the shareholders of Parklane been aware of Somekh's reasons for the going-private transaction, they, or others, might well have been able to enjoin the merger under New York law as having been under-taken for no valid corporate purpose. *See People v. Concord Fabrics, Inc.,* 83 Misc.2d 120, 371 N.Y.S.2d 550 (Sup.Ct.1975), *affirmed,* 50 A.D.2d 787, 377 N.Y.S.2d 84 (App.Div. 1st Dept., 1976).

This distinction has also been recognized by this court. In *Popkin v. Bishop,* 464 F.2d 714 (2nd Cir. 1972), the plaintiff-appellant alleged that the exchange ratios in a proposed merger were unfair to the minority shareholders of a corporation and that, therefore, the defendants had violated Section 10(b) and Rule 10b–5, even though there had been a full and fair disclosure of the material facts. The plaintiff argued that disclosure was irrelevant where, as he claimed was true in his case, the minority shareholders were powerless to prevent the merger.

This court found that the minority shareholders were not powerless, and held there was no basis for injunctive relief under the SEC Rule governing disclosure in connection with the purchase or sale of securities.

"In this case, armed with the information fully disclosed under compulsion of the federal proxy regulations and Rule 10b–5, appellant was placed in a position to sue under state law to enjoin the merger as unfair." (464 F.2d at 720)

Full and fair disclosure distinguishes *Santa Fe* from the case at hand, as does the fact that the issue in *Santa Fe* was whether a scheme to "go private" *per se* violates the federal securities laws. This case involves a failure to disclose when the non-disclosed information could have been used by the minority shareholders to attempt to enjoin the merger. The purpose for the merger was, therefore, relevant.

There is also support for the district court's findings that both the misstatement concerning the FRB–Parklane lease and the faulty appraisal basis in the proxy statement were material.

The defendants, at least at the time of the filing of the unamended proxy statement, indicated the importance of the status of the FRB negotiations to the shareholders of Parklane by specific mention

that there were no negotiations at present, and that the company was unable to determine if another offer would be made. If the status of the negotiations is material, then a significant change in that status is also material.[3]

The defendants concede that the determination of the materiality of these negotiations depends upon the principles enunciated by this court in *Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2nd Cir. 1968), *certiorari denied sub nom., Coates v. Securities and Exchange Commission*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). The district court, in applying *Texas Gulf Sulphur* in testing the materiality of this change in the status of the negotiations, stated:

> "In finding materiality as to the FRB negotiations, I am mindful of the fact that evaluation of the importance of the non-disclosure of an anticipated event requires:
>
> '. . . a balancing of both the indicated probability that the event will occur and the anticipated magnitude of the event in light of the totality of the company activity.'" (422 F.Supp. at 485)

Although the defendants assert that the district court did not apply this test, the record amply supports the court's conclusion. Important evidence for evaluating the "indicated probability" of the occurrence of this event is Somekh's own belief as expressed in a letter to an officer of a bank which had loaned him money, stating "it seems we may be heading towards a deal that would net Parklane $300,000 that can close around the end of the year."

■ Concerning the "magnitude of the event," the record disclosed that the $300,000 expected by Parklane from the leasehold cancellation was a significant amount. Even assuming only a $150,000 increase in the net earnings of Parklane after taxes, this amount is material when compared to the net earnings of Parklane of approximately $500,000 for the entire previous fiscal year.

■ Finally, the court was not in error in finding materiality in the omitted information concerning the appraisal. From the point of view of the public shareholders of Parklane, any information which would call into question the appraisal of stock furnished on the proxy was material, since the choice with which they were confronted was whether to opt for appraisal proceedings to or accept Parklane's offer. The appraisal in the proxy could reasonably be expected to mirror any appraisal for dissenters from the merger.

## V. *Relief*

The district judge did not abuse his discretion in refusing to grant an injunction against future violations.

■ The Commission cannot obtain injunctive relief where there is no reasonable likelihood of recurrence. *SEC v. National Student Marketing Corp.*, 360 F.Supp. 284 (D.D.C.1973); *SEC v. Franklin Atlas Corp.*, 171 F.Supp. 711 (S.D.N.Y.1959); *See also United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953).

■ The court found that the violations were an isolated occurrence. In determin-

---

**3.** Rule 14a–9, 17 CFR 240.14a–9, provides that:

"No solicitation subject to this regulation shall be made by means of any proxy statement . . . which omits to state any material fact . . . necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

This court has construed the rule to encompass the omission of significant facts subsequent to the original dissemination of the proxy statement:

"[W]e cannot suppose that management can lawfully sit by and allow shareholders to approve corporate action on the basis of a proxy statement without disclosing facts arising since its dissemination if these are so significant as to make it materially misleading, and we have no doubt that Rule 14a–9 is broad enough to impose liability for non-disclosure in this situation."

*Gerstle v. Gamble-Skogmo, Inc.*, 2 Cir., 478 F.2d 1281, 1297 n. 15. *Cf. Securities and Exchange Commission v. Manor Nursing Centers, Inc.*, 458 F.2d 1082, 1095–96 (2nd Cir. 1972).

ing whether to grant or deny injunctive relief, the district court has broad discretion. *Chris-Craft Industries, Inc. v. Piper Aircraft Corp. [SEC v. Bangor Punta Corp.]*, 480 F.2d 341, 393–95 (2nd Cir.), *certiorari denied*, 414 U.S. 924, 94 S.Ct. 234, 38 L.Ed.2d 158 (1973). The standard for review of a district court's denial is whether the court has abused its discretion. No such abuse has been shown here.

The remaining contentions being without merit, the decision of the district court is hereby affirmed.