Michael J. HEALEY, Jr., Individually for himself and derivatively on behalf of all shareholders of Catalyst Regeneration Services, Inc., for the benefit of Catalyst Regeneration Services, Inc., Plaintiffs,

v.

CATALYST RECOVERY OF PENNSYLVANIA, INC., SCR, Inc., Catalyst Recovery, Dennis J. Shaughnessy, Lawrence P. Naylor, III, P. Kenerick Maher, Wilbert H. Sirota, Robert H. Levi, and Mercantile Safe-Deposit and Trust Company, Defendants.

Civ. A. No. 76–884.

United States District Court,
W. D. Pennsylvania.

Jan. 17, 1979.

---

Albert G. Feczko, Jr., Feczko & Seymour, Pittsburgh, Pa., for plaintiffs.

Gilbert J. Helwig, Joseph F. McDonough, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

TEITELBAUM, District Judge.

### FACTS

On June 5, 1978, the jury returned a verdict for plaintiff Michael Healey on his Section 10(b) [1] claim in the amount of $189,-400 in the case *sub judice*. Presently ripe for disposition are defendants' motions for judgment notwithstanding the verdict and a new trial as well as plaintiff's motion for a partial new trial.

Evidence at trial indicated that plaintiff was a 20% shareholder in Catalyst Regeneration Services, Inc. (CRSI). A group of Texas investors owned the other 80% of CRSI's stock. Several people in Baltimore became interested in entering the catalyst business and pursued the possibility of acquiring CRSI with the Texas group. The Baltimore people and the Texas people were able to reach agreement on the purchase of the 80% majority interest but plaintiff Healey was unwilling to sell his 20% minority interest under the terms offered. Therefore, the Baltimore group, incorporated as SCR, Inc., purchased the 80% Texas interest in March, 1976. Viewing the evidence most favorably to plaintiff Healey, as we must in light of the jury verdict, the Baltimore stockholders of SCR, Inc. were not at all happy with their inability to acquire complete ownership of CRSI and were resolved to exclude plaintiff from "their" business.

---

1. Securities and Exchange Act of 1934, Section 10(b), 15 U.S.C. Sec. 78j(b).

Continued efforts at obtaining plaintiff's 20% stock interest proving unsuccessful, the shareholders of SCR, Inc. set out to eliminate plaintiff's minority interest via a merger. Thus, only one month after having acquired 80% of CRSI, Catalyst Recovery of Pennsylvania (CRPa) was formed by the Baltimore group in April of 1976 for the purpose of being the successor corporation to CRSI pursuant to the contemplated merger. Plaintiff was given formal notice of the proposed merger on April 12, 1976. The notice indicated that a vote on the proposed merger would take place on May 3, 1976. On May 3 such a vote did take place, with plaintiff declining to attend, and the merger was approved. The terms of the merger provided that plaintiff Healey would receive nonvoting preferred shares of SCR, Inc. in exchange for his 20% voting interest in CRSI. Again viewing the evidence most favorably to plaintiff, the preferred shares of SCR, Inc. were worthless or at the least a grossly inadequate *quid pro quo* for plaintiff's 20% interest in CRSI. Although originally scheduled for May 31, 1976, the merger was formally consummated on June 31, 1976. Plaintiff filed the instant action on July 7, 1976 which resulted in the verdict previously mentioned.

During the entire time period of SCR, Inc.'s interest in purchasing CRSI, plaintiff Healey had requested information about both the financial, organizational and ownership structure of SCR. Up to the time that the notice of merger was issued, defendants had consistently maintained that Healey had no right to such information inasmuch as SCR was offering cash for plaintiff's shares. After being made aware of the impending merger vote, plaintiff again requested information about SCR via a letter dated April 28, 1976. On April 29, 1976, plaintiff's attorney received a telephone call concerning the requested information which was confirmed by a letter received on May 3, 1976, the date of the merger vote. The substance of defendants' responses was a contested question of fact. Plaintiff argued that defendants' letter received on the date of the merger vote could not reasonably be interpreted as a legitimate offer to provide the information so often requested by plaintiff.[2] Defendants, on the other hand, contended that their letter was an adequate offer to produce the information requested by plaintiff and that the offer was repeated in mid-May in response to another request from plaintiff's attorney.[3] Viewing the evidence most favorably to plaintiff, the information concerning SCR, Inc. was never completely made available to plaintiff.[4]

A brief description of all the defendants is appropriate at this time. The individual defendants are Dennis J. Shaughnessy, Lawrence P. Naylor, III, P. Kenerick Maher, Wilbert H. Sirota and Robert H. Levi. Each individual defendant is a member of the previously mentioned Baltimore group and occupied various positions in the corporate defendants such as director, officer and attorney. The corporate defendants are Catalyst Recovery of Pennsylvania, Inc., Catalyst Recovery of Louisiana, Inc. and Catalyst Recovery, Inc. Catalyst Recovery of Pennsylvania, Inc. is the successor corporation to CRSI. Catalyst Recovery of Louisiana, Inc. is a corporation controlled by the individual defendants which allegedly was designed to benefit from the demise of CRSI. Catalyst Recovery, Inc. is the new name for SCR, Inc., which was the company that acquired 80% of CRSI from the Texas group. The jury verdict was rendered against all defendants, individual and corporate.

While the foregoing merger strategy is somewhat involved, the issue submitted to the jury was straightforward: Did defendants fraudulently freeze out plaintiff from CRSI? Their affirmative response leads to

---

2. Trial Tr., P. 880–881.

3. Trial Tr., P. 896–899.

4. The jury explicitly found in answer to question number one of the special verdict sheet that the defendants either misrepresented material fact which plaintiff relied upon or failed to disclose material fact to plaintiff in connection with the merger.

consideration of defendants' post-trial motions.

## DISCUSSION

 The only issue raised in any of the three post trial motions which requires extended discussion is the contention of defendants that causation is absent in the case *sub judice*.[5]

The position of defendants is that the merger orchestrated by SCR, Inc. was assured of approval from the moment of its inception. Since SCR, Inc. was an 80% shareholder of CRSI, Healey, being only a 20% shareholder, was powerless to prevent the merger which resulted in the sale of his shares. Therefore, defendants conclude that there is no causal connection between any misrepresentations or omissions and plaintiff's alleged loss since he did not have the option of declining to sell. Presumably, no matter how much information plaintiff might have possessed, the course of events could not be altered. Adoption of such a position would insulate fraudulent conduct directed toward minority shareholders such as plaintiff from the strictures of Section 10(b). The minority shareholder plaintiff would then be relegated to whatever other remedies are available. In the case *sub judice* plaintiff's alternate remedy would be appraisal under Texas Law to recover the fair value of his shares.

 It is important to note at the outset that the reach of Section 10(b) is sufficiently broad to encompass breaches of corporate fiduciary duty accompanied by fraud. *Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *Goldberg v. Meridor,* 567 F.2d 209 (2d Cir. 1977); *Sec. and Exchange Commission v. Penn Central Co.,* 450 F.Supp. 908 (E.D.Pa.1978). *Santa Fe* and its progeny authoritatively reestablish that in connection with a merger Section 10(b) is designed to "*ensures that shareholder approval is fairly sought and freely given.*" *Popkin v. Bishop,* 464 F.2d 714, 720 (2d Cir. 1972). Once there has been full disclosure, however, the wisdom or fairness of the transaction does not implicate federal law.[6] Recognizing that deceptive or manipulative conduct by defendants in connection with the merger in controversy can form the basis for a violation of Section 10(b), this Court now turns to the specific contention of defendants that the necessary Section 10(b) element of causation is absent.

---

**5.** Defendants' other contentions in their motion for judgment notwithstanding the verdict are disposed of by the jury verdict. The jury explicitly found that defendants had acted with an intent to defraud plaintiff or in reckless disregard of whether or not plaintiff would be defrauded *and that defendants had either misrepresented or failed to disclose material facts.* (SEE ANSWERS TO QUESTIONS 1 AND 3 OF SPECIAL VERDICT SHEET.)

Defendants raise certain other contentions in connection with their motion for a new trial or other relief. First, defendants claim error in permitting testimony that a certain exhibit was forged when that exhibit was stipulated to be authentic by plaintiff's counsel at pretrial. Testimony as to the nature of a document, however, is not foreclosed by a stipulation of authenticity. See 5 STANDARD PA. PRACTICE, Sec. 292, *AUTHENTICATION OF CONTENTS—ALTERATION,* p. 493. In any event, defendants' counsel did not object to the testimony at trial or ask for a curative instruction. (Trial Tr. pp. 332–334) Secondly, defendants claim it was error to exclude evidence of the price at which plaintiff had offered to sell his shares of CRSI in 1975. However, evidence of compromises or offers to compromise is not admissible at trial. Federal Rule of Evidence 408 (See Also, Trial Tr. p. 229.)

Plaintiff's motion for a partial new trial also requires but short mention. Plaintiff's derivative action was dismissed because the only evidence of possible corporate mismanagement implicated the prior Texas ownership block of CRSI. There was no evidence which would have supported such a finding as to the defendants. (See Trial Tr. pp. 560–563). Plaintiff's claim for punitive damages was not submitted to the jury because such damages are not recoverable in a Section 10(b) action. (Trial Tr. p. 18) Lastly, Mercantile Bank and Trust Company was dismissed because the only pertinent evidence produced indicated that two of the defendants are employed by the bank. There was no evidence whatsoever of actionable fraud attributable to the bank itself. (Trial Tr. pp. 557–559) Accordingly, defendants' motion for a new trial and plaintiff's motion for a partial new trial will be denied.

**6.** If there had been full and fair disclosure of information concerning SCR, Inc. there could be *no federal securities law violation regardless* of how inadequate or unfair were the terms of the merger.

■ The position of defendants is substantially based on a footnote in the *Santa Fe* case where the Supreme Court stated: "[*b*]ut respondents do not indicate how they might have acted differently had they had prior notice of the merger." 430 U.S. at 474, 97 S.Ct. at 1301. It is important to bear in mind, however, that the Court in *Santa Fe* recognized that under Delaware Law the merger could not have been enjoined because appraisal was the exclusive state law remedy. While disputing its ultimate success on the merits, neither of the parties in the instant case contends the opportunity for plaintiff to obtain injunctive relief was not available under state law. In fact, plaintiff testified that unavailability of the requested information about SCR, Inc. was precisely the reason he did not pursue injunctive relief in an attempt to block the merger. The availability of an injunctive action under state law constitutes a sufficient basis for distinguishing the *Santa Fe* footnote. See *Goldberg, supra* at 220.[7]

Additionally, defendants had the opportunity to argue lack of causation to the jury and did so vigorously. The jury was specifically charged that plaintiff needed to prove that he suffered damages as a proximate result of alleged misleading statements or omissions and that the misleading statement or omission played a substantial part in bringing about or causing the damage suffered by him. The jury was further charged, substantially in accord with defendants' proposed jury instruction number 2, that a material fact could only be one which a reasonable man would attach importance to in determining his choice of action in the transaction in question. *T.S.C. Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). Even if found to be a material fact, the jury was further instructed that if the material facts had been disclosed and plaintiff's decision would not have been different from what it was, then recovery should be denied. The jury had ample opportunity and information to adopt defendants' position that causation is lacking. Having chosen not to do so, this Court will not disturb the jury's reasoned judgment as trier of fact.[8]

A holding that causation is absent whenever a minority shareholder lacks the voting strength to defeat a merger vote would be counterproductive to the spirit of full and fair disclosure embodied in Section 10(b). In other similar situations to the case *sub judice*, the majority ownership would actually be induced to act fraudulently. Without fear of running afoul of the Securities and Exchange Act, the corporate control group can establish an inadequate exchange ratio with impunity, comfortable in the knowledge that an appraisal granting the appropriate fair value to the minority shareholder(s) is the only likely consequence. They need not be concerned with the possibility of securities fraud and if fortunate, the minority may unwittingly believe the exchange ratio to be fair and passively ensure the success of the fraudulent scheme.

■ Confronted with a jury finding of causation and satisfied that such a finding is supportable as a matter of law, defendants' motion for judgment notwithstanding the verdict must be denied. A case where

---

7. In *Popkin, supra* at 720 the Court similarly concluded: "Appellant argues that disclosure is irrelevant when, as here, the minority shareholders are powerless to prevent the merger. We do not agree. In this case, armed with the information fully disclosed under compulsion of the federal proxy regulations and Rule 10b–5, appellant was placed in a petition to sue under state law to enjoin the merger as unfair." There is no suggestion in the subsequent *Santa Fe* opinion that the rationale of *Popkin* is unsound.

8. Defendants' motion for new trial also suggests that it was error not to submit the issue of causation to the jury via a specific question on the special verdict slip. However, the usefulness of special verdicts would be greatly undermined were every issue in the case specifically submitted to the jury. The purpose of guidance for the jury, Court and parties would likely be transformed into substantial confusion. In any event, with the extensive treatment of causation and materiality in the charge, defendants cannot seriously suggest that they were in any way prejudiced.

fraudulent conduct resulted in the forfeiture of potential injunctive relief and gross undervaluation of the worth of plaintiff's shares falls squarely within the proscription of Section 10(b).

An appropriate Order will issue.[9]

---

9. It has come to the Court's attention that the judgment in the instant case was inadvertently entered in favor of plaintiff both individually and derivatively on behalf of the shareholders of CRSI. The derivative action being dismissed at trial, judgment is entered only in favor of plaintiff individually.